Opinion issued October 30, 2008 

 








 





In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00079-CV

NO. 01-08-00829-CV

____________


STEPHEN E. TANNER, Appellant


V.


MICHAEL G. MCCARTHY, Appellee






On Appeal from 127th District Court

Harris County, Texas

Trial Court Cause No. 2006-68657






O P I N I O N


 Appellant, Stephen E. Tanner, appeals from a domesticated judgment enforced
against him under the Texas Uniform Enforcement of Foreign Judgments Act
("UEFJA") (1) and the entry of a turnover order that included the appointment of a
receiver and a master in chancery. (2) We determine (1) whether the trial court abused
its discretion in denying Tanner's motion to dismiss the UEFJA action and in issuing
the turnover order and (2) whether we have jurisdiction to consider Tanner's
challenge to the trial court's appointment of a master in chancery. We affirm the
domesticated judgment, but reverse the trial court's turnover order, except the portion
appointing a receiver, which we do not address for lack of an appellate challenge, and
the portion appointing a master in chancery, which we have no jurisdiction to
consider.

Background

 On June 5, 2006, appellee, Michael G. McCarthy, secured a judgment for
$625,000 against Tanner in the latter's bankruptcy case in the United States District
Court for the Western District of Texas. On October 25, 2006, McCarthy filed a
notice of filing of foreign judgment in the 127th District Court of Harris County,
requesting domestication of the judgment, as well as a separate application for post-judgment turnover and the appointment of a receiver and master in chancery. On
November 13, 2006, Tanner filed an answer generally denying the allegations and
asserting that the trial court was without jurisdiction. That same day, Tanner also filed
a motion "to dismiss for want of jurisdiction or, alternatively, to either stay
enforcement or transfer venue, and for sanctions." On January 19, 2007, after a
hearing on Tanner's motion to dismiss, the trial court denied the motion to dismiss
and, in a separate order, granted McCarthy's application for post-judgment turnover
and appointment of receiver and master in chancery. On January 26, 2007, Tanner
filed notice of appeal from both the domesticated judgment and from the order "for
turnover and appointment of a master in chancery." (3) 


The Domestication of the Judgment

 Tanner raises two issues challenging the domestication of the judgment,
arguing that the trial court erred in denying his motion to dismiss because (1) the
UEFJA does not apply to judgments rendered by federal courts situated in Texas and
(2) McCarthy failed to comply with UEFJA requirements and, therefore, the trial
court had no jurisdiction to enforce the judgment under the UEFJA. We review the
trial court's ruling on the motion to dismiss under an abuse-of-discretion standard. 
See Enviropower L.L.C. v. Bear, Sterns & Co., Inc., No. 01-04-0111-CV, 2008 WL
456491, at *2 (Tex. App.--Houston [1st Dist.], Feb. 21, 2008, pet. filed) (applying
abuse-of-discretion standard to ruling on motion to vacate foreign judgment); Mindis
Metals, Inc. v. Oilfield Motor & Control, Inc., 132 S.W.3d 477, 485-86 (Tex.
App.--Houston [14th Dist.] 2004, pet. denied) (same). We first address Tanner's
second issue.

A. Requirements of the UEFJA


 The UEFJA provides a means by which an authenticated copy of a foreign
judgment may be filed in a court of competent jurisdiction in Texas and become
enforceable as a Texas judgment. Tex. Civ. Prac. & Rem. Code Ann. § 35.003(c)
(Vernon 2008); Walnut Equip. Leasing Co. v. Wu, 920 S.W.2d 285, 286 (Tex. 1996). 

The UEFJA requires that

(1) a judgment creditor file an authenticated copy of the foreign
judgment with the clerk of a court of competent jurisdiction of this
state; (4)


(2) at the same time as the filing of the judgment, the creditor or his
attorney file with the clerk of the court an affidavit showing the name
and last known post office address of the judgment debtor and the
judgment creditor; (5)


(3) the clerk of the court promptly mail notice of the filing to the
judgment debtor at the address given and note the mailing on the
docket; (6) and 


(4) the judgment creditor pay the applicable filing fees. (7)


 Tanner contends that McCarthy failed to file the affidavit required by section
35.004(a), resulting in an action that was "procedurally defective" and "fail[ed] to
vest the trial court with jurisdiction" to consider it. Tanner asserts that, "[d]ue to this
defect, the trial court was without jurisdiction to entertain [McCarthy's] proceeding." 
McCarthy acknowledges that he did not file the affidavit required by section
35.004(a), but responds that he complied with the alternate notice procedure
permitted by section 35.005 and was therefore not required to comply with section
35.004(a).

 The requirement that an affidavit containing specific information be filed at the
same time as the authenticated foreign judgment is distinct from the requirement that
notice be given. Although section 35.005(a) of the UEFJA provides an alternative
means for providing notice of the filing of the judgment to the debtor, nothing in that
section relieves the creditor of his responsibility under section 35.004(a) to file the
affidavit required to be filed at the same time as the authenticated foreign judgment. 
The notice of filing mailed to the debtor, by whichever authorized means, occurs
necessarily after the filing of the judgment. The affidavit, by contrast, is required to
be filed concurrently with the judgment. Proper compliance with the notice
requirements of the UEFJA cannot correct a deficiency in compliance with the filing
requirements of the act. 

 Although the filing of the affidavit at the time that the authenticated foreign
judgment is filed is a specific requirement of the UEFJA, it does not follow that the
failure to comply with this statutory provision presents a jurisdictional, rather than a
procedural, bar to the domestication of a foreign judgment under that act. Even when
compliance with a statutory requirement is a mandatory condition for pursuing an
action under a particular statutory scheme, this does not mean that compliance with
the requirement is jurisdictional. Igar v. Brightstar Info. Techn. Group, Inc., 250
S.W.3d 78, 83-84 (Tex. 2008); Albertson's Inc., v. Sinclair, 984 S.W.2d 958, 961
(Tex. 1999). Rather, one "must look to legislative intent to determine whether a
requirement is jurisdictional." Igar, 250 S.W.3d at 84. "Whether a filing requirement
is jurisdictional is a question of statutory interpretation," and thus a court should
review the words of the statute, as well as the entire statutory scheme, in order to
ascertain whether the Legislature intended the requirement to address the boundaries
of jurisdiction. Id. Among factors to be considered in determining the Legislature's
intent are the provision's purpose, Univ. of Tex. Southwestern Med. Ctr. at Dallas v.
Loutzenhiser, 140 S.W.3d 351, 360 (Tex. 2004), and the consequences of
noncompliance provided by the statutory scheme, Sinclair, 984 S.W.2d at 961-62. 

 The specific language of section 35.004(a), (8) and its placement in the UEFJA
(in the same statutory section as the standard notice requirement, section 35.004(b), (9)
which references it), as well as consideration of its role in the UEFJA scheme,
suggest that this particular filing requirement exists in order to aid the trial court in
its notice to the judgment debtor of the filing of the foreign judgment. Nothing in the
language of section 35.004(a), nor in any other portion of the UEFJA, suggests that
the filing, or non-filing, of the required affidavit affects the jurisdiction of the trial
court to consider an action under the UEFJA. Likewise, nothing in the language of
either section 35.004(a) itself, or in any other portion of the UEFJA, provides any
statutory or practical consequences for the failure of a judgment creditor to file the
required affidavit, save for the practical effect that the court clerk would not have the
information necessary to send the notice required in section 35.004(b) to the
judgment debtor, which would ordinarily prevent the enforcement of the foreign
judgment as a Texas judgment. See Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a)
& (b) (Vernon 2008); Carter v. Jimerson, 974 S.W.2d 415, 417 (Tex. App.--Dallas
1998, no pet.) (concluding that filing of foreign judgment under UEFJA is effective
only if statutory requirements of authentication, filing, and notice are met). However,
even that consequence may be avoided if notice is provided under section 35.005(a),
which would allow the judgment to be enforced, notwithstanding the clerk's failure
to send out a section 35.004(b) notice. Tex. Civ. Prac. & Rem. Code Ann. §
35.005(a) & (b) (Vernon 2008). (10) 

 In sum, nothing in the statutory language or scheme, nor anything in the
apparent purpose of the provision or the consequences of non-compliance with it,
demonstrates that the Legislature intended that a judgment creditor's failure to file the
affidavit required under section 35.004(a) would deprive the trial court of jurisdiction
to consider an action under the UEFJA.

 We therefore hold that the trial court did not abuse its discretion by not
granting Tanner's motion to dismiss for lack of jurisdiction, and we overrule his
second issue.

B. The Applicability of the UEFJA to Judgments Rendered in Texas by
Federal Courts


 The UEFJA defines "foreign judgment" as "a judgment, decree, or order of a
court of the United States or of any other court that is entitled to full faith and credit
in this state." Tex. Civ. Prac. & Rem. Code Ann. § 35.001 (Vernon 2008). In his
first issue, Tanner argues that because Texas Property Code section 52.007 (11) permits
the recording and indexing of the abstract of a judgment rendered in this state by a
federal court, creating a lien on the real property of a defendant located in the county
in which the abstract is recorded, (12) judgments from federal courts "situated in Texas"
are not "foreign" judgments at all. He concludes that the judgment rendered against
him by the United States District Court for the Western District of Texas was,
therefore, not a "foreign judgment" as contemplated by the UEFJA and thus could not
be enforced under the UEFJA's provisions. 

 There are no Texas authorities supporting an interpretation of Texas Civil
Practice and Remedies Code section 35.001 that would exclude federal courts
"situated in Texas" from that section's definition of "foreign judgments" or that
would make Texas Property Code section 52.007 the exclusive remedy under state
law for enforcement of a judgment rendered in Texas by a federal court. The plain
language of Texas Civil Practice and Remedies Code section 35.001 defines a
"foreign judgment" to include a judgment of a "court of the United States." There is
no exception or exclusion in section 35.001 for courts of the United States that are
physically located in Texas. We decline to read additional language into section
35.001 that would substantially alter the definition of "court of the United States"
from its plain meaning into "court of the United States, unless such court is situated
in the state of Texas," thereby excluding an entire class of federal court judgments
from recognition and enforcement as Texas judgments under the UEFJA. See City
of Houston v. Jackson, 192 S.W.3d 764, 770 (Tex. 2006) (providing that when
language of statute is unambiguous, courts must apply the statute as written); Alex
Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 651-52 (Tex. 2006)
(holding that "enacted language is what constitutes the law, and when a statute's
words are unambiguous and yield a single inescapable interpretation," court's inquiry
"is at an end").

 Similarly, the language of Texas Property Code section 52.007 does not create
an exclusive means of post-judgment enforcement for judgments rendered in Texas
by federal courts. The Legislature has the authority to provide judgment creditors
with more than one means to attempt to enforce a judgment. (13) Moreover, the
language of section 52.007 does not place any restrictions on the methods of
enforcement of judgments rendered by "federal courts situated in Texas." (14) There is
no language in section 52.007 that can be read as establishing it as the exclusive
means under state law for enforcing a judgment issued from a federal court "situated"
in Texas. 

 Tanner acknowledges that there is "no Texas law on the matter," but urges this
Court to apply the rationale of Knapp v. McFarland, 462 F.2d 935 (2nd Cir. 1972),
abrogated by Keeton v. Hustler Magazine, Inc., 815 F.2d 857 (2nd Cir. 1987). Knapp
involves the construction of two New York state law provisions (15) that are similar to
the Texas statutes before us in this case (16) and is based largely on a later repudiated
analysis of New York legislative history. See Keeton, 815 F.2d at 860-61. We find
the reasoning in Knapp on which Tanner relies unpersuasive in our construction of
the relevant Texas statutes. 

 The court in Knapp focused on the fact that New York's version of the UEFJA
was passed after the enactment of another provision of New York law applicable to
the enforcement of federal court judgments. From this fact, the Knapp court
concluded that, because there was already a remedy in place by which a federal court
judgment could be enforced as a state judgment, the New York Legislature must not
have meant for the UEFJA to apply to federal court judgments because there was "no
need . . . for the enactment of a new statute to enforce judgments rendered by federal
district courts." Knapp, 462 F.2d at 939. In subsequently abrogating its decision in
Knapp, the Second Circuit Court of Appeals specifically repudiated this interpretation
of the legislative history, noting that the legislative history actually supported the
plain reading of the UEFJA to include federal district courts. (17) Keeton, 815 F.2d at
860-61. 

 We note that Tanner's rationale for the inapplicability of the UEFJA is
essentially the same as that advanced by the debtor in Keeton, who argued that the
UEFJA was unavailable to the creditor because a preexisting state remedy was the
sole means of enforcing a federal court judgment, citing to Knapp. See Keeton, 815
F.2d at 858-59. In rejecting that argument, the Keeton court held that the
legislature's clear intent, that the UEFJA be an available remedy for the enforcement
of foreign judgments, "should not be overridden simply because the same result could
also be achieved" through the use of the preexisting state remedy. Id. at 861. We
similarly hold that the availability under Texas law of one specific means of
enforcement of judgments issued in Texas by a federal court--under Texas Property
Code section 52.007--does not override the clear intent of the Texas Legislature to
provide a more comprehensive remedy under the UEFJA for the enforcement of
judgments of "court[s] of the United States" in this state. 

 We hold that the trial court did not abuse its discretion in not granting Tanner's
motion to dismiss on the ground that the UEFJA was inapplicable to judgments
rendered by federal courts situated in Texas, and we overrule his first issue.

The Turnover Order


 Tanner raises a single issue challenging the trial court's entry of the order and
the appointment of a master-in-chancery therein. We may review a turnover order on
appeal, Schultz v. Fifth Judicial Dist., 810 S.W.2d 738, 740 (Tex. 2004) (orig.
proceeding), abrogated on other grounds by In re Sheshtawy, 154 S.W.3d 114 (Tex.
2004), and do so under an abuse-of-discretion standard, Beaumont Bank, N.A. v.
Buller, 806 S.W.2d 223, 226 (Tex. 1991). 

 A trial court's entry of a turnover order is governed by Texas Civil Practice and
Remedies Code section 31.002. See Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a)
(Vernon 2008). Under that section, a judgment creditor is entitled to receive aid from
a court in order to reach property to obtain satisfaction on a judgment "if the
judgment debtor owns property . . . that: (1) cannot readily be attached or levied on
by ordinary legal process; and (2) is not exempt from attachment, execution, or
seizure for the satisfaction of liabilities." Id. The court may order the judgment
debtor to turn over nonexempt property to a designated sheriff or constable for
execution, may otherwise apply the property to the satisfaction of the judgment, or
may appoint a receiver with the authority to take possession of the nonexempt
property, to sell it, and to pay the proceeds to the judgment creditor as required to
satisfy the judgment. Id. § 31.002(b) (Vernon 2008). The trial court is not required
to identify in the order the specific property subject to turnover. Id. § 31.002(h)
(Vernon 2008). 

 Tanner submits that the trial court abused its discretion because it entered the
turnover order against him without hearing any evidence. Tanner argues that
subsection (a) of section 31.002 requires that there be a showing, by proof of
necessary facts, that he owned nonexempt property that could not be readily attached
or levied on by ordinary legal process. 

 McCarthy responds that subsection (h) of section 31.002, (18) enacted in 2005,
eliminates the need for a judgment creditor to specifically identify the nonexempt
assets of a debtor as a prerequisite to obtaining a turnover order and that section
31.002 does not require that a hearing be conducted in order for relief to be granted. 
McCarthy also contends that, because of the enactment of subsection (h), there is now
no requirement that there be a showing that a debtor possesses nonexempt property
before turnover relief can be granted.

 Subsection (a) of Section 31.002 governs the conditions under which a
judgment creditor may receive aid from a court in reaching property in satisfaction
on a judgment, namely, "if the judgment debtor owns property . . . that: (1) cannot
readily be attached or levied on by ordinary legal process; and (2) is not exempt from
attachment, execution, or seizure for the satisfaction of liabilities." (19) Id. § 31.002(a).

 Subsection (h) of section 31.002 governs the language of the order, providing
a trial court the discretion to enter or to enforce an order requiring turnover of
nonexempt property without identifying in the order the specific property subject to
turnover. (20) Id. § 31.002(h). 

 In the instant appeal, Tanner does not complain that the language of the
turnover order did not specify the property that was to be subject to turnover, nor does
he challenge the trial court's grant of the turnover order without holding a hearing on
the application for turnover. Indeed, section 31.002 does not require that a judgment
creditor seeking a turnover order identify all, or even any, of the judgment debtor's
assets that are to be the subject of the turnover order, nor does the statute require the
trial court to identify the specific property subject to turnover in its turnover order. 
See id. § 31.002(h). Accordingly, the statute does not require the trial court to hold
a hearing to receive evidence on each specific asset subject to turnover prior to
entering a turnover order against a judgment debtor. 

 The gravamen of Tanner's issue is instead that the trial court abused its
discretion in entering a turnover order because the conditions under which a creditor
could receive aid under section 31.002 were not established, namely, that Tanner
owned any nonexempt property that could not be readily attached or levied on by
ordinary legal process. Our resolution of this challenge, therefore, is governed by the
language of section 31.002(a), not that of section 31.002(h).

 A trial court will not be reversed for an abuse of discretion so long as there is
some evidence of a substantive and probative character to support the decision.
Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.--Houston [1st Dist.] 1993, writ
denied). Lack of evidence to support a turnover order is a relevant consideration in
determining whether a trial court abused its discretion in granting the order. Buller,
806 S.W.2d at 226. 

 Section 31.002(a) specifies that a judgment creditor may receive aid from a
court under its provisions "if" the judgment debtor owns property that is nonexempt
and that could not readily be attached or levied on by ordinary legal process. Tex.
Civ. Prac. & Rem. Code Ann. § 31.002(a)(Vernon 2008). Conversely then, a
judgment creditor may not receive aid from the court under the provisions of section
31.002 if the judgment debtor does not own property that is nonexempt and that could
not readily be attached or levied on by ordinary legal process. Id. The relief allowed
by section 31.002(b), therefore, may be granted only when the conditions in section
31.002(a) exist. The language of subsection (h), which permits a trial court to enter
or to enforce an order requiring turnover without identifying the specific property
subject to turnover in the order, does not eliminate the fundamental, preliminary
requirement that the conditions of subsection (a), which sets out the parameters for
the application of section 31.002, exist in order for the trial court to be able to grant
relief under section 31.002. 

 Accordingly, before a trial court may grant relief under section 31.002(b), the 
conditions of section of 31.002(a) must exist, namely, 

 (1) the entity that is to receive aid must be a judgment creditor;

 (2) the court that would grant aid must be one of appropriate jurisdiction; 

 (3) the aid to be given must be in order to reach property to obtain
satisfaction on the judgment; and


 (4) the judgment debtor must own property (including present or future
rights to property) that:


(a) cannot be readily attached or levied on by ordinary legal
process and


(b) is not exempt from attachment, execution, or seizure for the
satisfaction of liabilities.


Id. § 31.002(a). 

 Section 31.002 does not specify, or restrict, the manner in which evidence may
be received in order for a trial court to determine whether the conditions of section
31.002(a) exist, nor does it require that such evidence be in any particular form, that
it be at any particular level of specificity, or that it reach any particular quantum
before the court may grant aid under section 31.002. (21) However, a trial court must
nonetheless determine that the request for aid pending before the court falls within
the scope of section 31.002 before it enters an order granting relief under that section. 
In making this determination, the trial court must have some evidence before it that
establishes that the necessary conditions for the application of 31.002 exist. See
Shultz, 810 S.W.2d at 740 (holding that turnover statute requires factual showing that
judgment debtor has nonexempt property that is not readily subject to ordinary
execution); Clayton v. Wisener, 169 S.W.3d 682, 683-84 (Tex. App.--Tyler 2005,
no pet.) (holding that trial court abused its discretion in entering turnover order
without any evidence of facts required by section 31.002(a) and based only on motion
and argument of judgment creditor's counsel); accord Buller, 806 S.W.2d at 226
(holding that lack of evidence to support turnover order is relevant consideration in
determining whether trial court abused its discretion in entering order). 

 The application for turnover in the present case recites in relevant part: 

Applicant has no knowledge of any property owned by Respondent
which is subject to execution. The property made the basis of this
Application is not readily attachable by ordinary legal process . . . .
Applicant has reason to believe and does believe that every Respondent
owns or has rights to the non-exempt personal property of the described
nature and type. 


 The application adduced no evidence, by affidavit or otherwise, which would
have provided the trial court a basis to conclude that Tanner owned any property
subject to turnover under section 31.002(a). The trial court did not conduct an
evidentiary hearing on the application, and there is no evidence in the record that it
received evidence on the application by any other means prior to granting the
turnover order.

 The trial court's turnover order included the following recitations:

No respondent has, upon applicant's knowledge and belief, assets which
can be readily attached or levied on by ordinary legal process. No
respondent's assets are exempt from attachment, execution and every
type of seizure for the satisfaction of the judgment. 


 These recitations do not establish that the trial court concluded that Tanner
owned any property subject to turnover under section 31.002. They state only that
Tanner did not have any exempt assets or any property that could be readily attached
or levied on by ordinary legal means. There is no evidence in the record to support
these recitations or to establish that the necessary conditions for the application of
section 31.002(a) existed. There is no evidence in the record, as it existed prior to the
entry of the turnover order, (22) to indicate that Tanner owned any nonexempt property
that could not be readily attached or levied on by ordinary legal process and so could
be subject to a turnover order. (23) There is, therefore, no evidence that supports the trial
court's decision to render the turnover order against Tanner, and we hold that the trial
court abused its discretion in doing so.

 Tanner also complains that the trial court appointed a receiver with powers of
master-in-chancery without a showing of exceptional circumstances or of good cause,
as required by Texas Rule of Civil Procedure 171. See Tex. R. Civ. P. 171. We read
this as a challenge to the portion of the order granting the receiver the powers of
master-in-chancery, rather than as a challenge to the appointment of a receiver in
general, which is governed by different authorities. (24) We have no appellate
jurisdiction to address this issue: the proper vehicle to challenge a post-judgment
order appointing a master-in-chancery is by petition for writ of mandamus. Sheihk
v. Sheihk, 248 S.W.3d 381, 394 (Tex. App.--Houston [1st Dist.] 2007, no. pet.)
(holding that post-judgment order appointing master-in-chancery, even one that is
embedded into a turnover-and-receivership order, is interlocutory order over which
there is no appeal, but which may be challenged by mandamus); Moyer v. Moyer, 183
S.W.3d 48, 58 (Tex. App.--Austin 2005, no pet.) (holding that post-judgment
appointment of master-in-chancery is not final and appealable order).

 We sustain Tanner's issue challenging the turnover order and reverse the
turnover order, except for the portion appointing the master-in-chancery, over which
we have no jurisdiction, and the portion appointing a receiver, which was not
challenged on appeal. 

Conclusion

 We affirm the domesticated judgment in Cause No. 01-07-00079-CV, but
reverse the trial court's turnover order in Cause No. 01-08-00829-CV, except as to
the appointment of a receiver, which we do not address, and the appointment of a
master in chancery, which we have no jurisdiction to consider. We remand the case
to the trial court.

 


 Tim Taft

 Justice


Panel consists of Justices Taft, Bland, and Hudson. (25) 
1. Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001-.008 (Vernon 2008).
2. The domesticated judgment is appealed in appellate cause number 01-07-00079-CV, and the order entering a turnover and appointing a receiver and
master-in-chancery is appealed in appellate cause number 01-08-00829-CV.
3. The notice of appeal from the domesticated judgment was due on January 23,
2007, because the judgment was filed on October 25, 2006 and Tanner filed a
motion to dismiss the action on November 13, 2006. See Tex. R. App. P.
26.1(a)(1); Walnut Equip. Leasing Co. v. Wu, 920 S.W.2d 285, 286 (Tex.
1996) (filing of foreign judgment under UEFJA "comprises both a plaintiff's
original petition and a final judgment," enforceable as Texas judgment as of
date of filing); Moncrief v. Harvey, 805 S.W.2d 20, 23 (Tex. App.--Dallas
1991, no writ) ("[A]ny motion to contest the recognition of a foreign judgment,
filed within thirty days after the filing of the foreign judgment, operates as a
motion for new trial in the context of a [UEFJA] proceeding."); accord Cash
Register Sales & Servs. of Houston, Inc. v. Copelo Capital, Inc., 62 S.W.3d
278, 280 (Tex. App.--Houston [1st Dist.] 2001, no pet.) (applying Wu). 
Tanner did not timely file a motion for extension of time to file notice of
appeal, but did subsequently file a reasonable explanation for his failure to file
a timely notice of appeal. See Coronado v. Farming Technology, Inc., 994
S.W.2d 901, 901 (Tex. App.--Houston [1st Dist.] 1999, order) (holding that
late-filed notice of appeal, filed within 15 days after deadline, together with
subsequently filed reasonable explanation, was sufficient to vest appellate
court with jurisdiction). 


 
4. Tex. Civ. Prac. & Rem. Code Ann. § 35.003(a) (Vernon 2008).
5. Id. § 35.004(a) (Vernon 2008). 
6. Id. § 35.004(b) (Vernon 2008). However, the judgment creditor may also send
notice of the mailing directly to the judgment debtor and file proof of mailing
with the clerk of the court. Id. § 35.005(a) (Vernon 2008). If the judgment
creditor sends notice to the debtor directly and files proof of mailing with the
clerk, then failure of the clerk to send the required notice will not affect the
enforcement proceedings. Id. § 35.005(b) (Vernon 2008). 
7. Id. § 35.007 (Vernon 2008). 

8. "At the time a foreign judgment is filed, the judgment creditor or the judgment
creditor's attorney shall file with the clerk of the court an affidavit showing the
name and last known post office address of the judgment debtor and the
judgment creditor." Tex. Civ. Prac. & Rem. Code Ann. § 35.004(a). 
9. "The clerk shall promptly mail notice of the filing of the foreign judgment to
the judgment debtor at the address given and shall note the mailing in the
docket." Id. § 35.004(b).
10. Section 35.005 provides:


(a) The judgment creditor may mail proof of notice of the filing
of the judgment to the judgment debtor and may file proof of
mailing with the clerk.


(b) A clerk's lack of mailing the notice of filing does not affect
the enforcement proceedings if proof of mailing by the judgment
creditor has been filed.


Tex. Civ. Prac. & Rem. Code Ann. § 35.005.
11. Tex. Prop. Code Ann. § 52.007 (Vernon 2007) ("An abstract of a judgment
rendered in this state by a federal court may be recorded and indexed under this
chapter on the certificate of the clerk of the court.").
12. Id. § 52.001 (Vernon Supp. 2008) ("[A] first or subsequent abstract of
judgment, when it is recorded and indexed in accordance with this chapter . .
. constitutes a lien on and attaches to any real property of the defendant . . . that
is located in the county in which the abstract is recorded and indexed . . . .").
13. The UEFJA recognizes that it is not an exclusive means of enforcement under
state law for foreign judgments. Tex. Civ. Prac. & Rem. Code Ann. § 35.008
(Vernon 2008) ("A judgment creditor retains the right to bring an action to
enforce a judgment instead of proceeding under this chapter.").
14. The language of the statute makes the applicability of this provision dependant
on the location of the rendering of the judgment, rather than the physical
location of the court itself.
15. The two provisions at issue in Knapp were CPLR § 5018(b), which the Knapp
court quoted as stating 

 

 A transcript of the judgment of a court of the United States
rendered or filed within the state may be filed in the office of the
clerk of any county and upon such filing the clerk shall docket the
judgment in the same manner and with the same effect as a
judgment entered in the supreme court within the county,

 

Knapp v. McFarland, 462 F.2d 935, 938 (2nd Cir. 1972), and CPLR § 5401,part of the New York UEFJA, which the Keeton court set out in its opinion,
defining a foreign judgment as 


any judgment, decree, or order of a court of the United States or
of any other court which is entitled to full faith and credit in this
state, except one obtained by default in appearance, or by
confession of judgment.


Keeton v. Hustler Magazine, Inc., 815 F.2d 857, 858 (2nd Cir. 1987).
16. CPLR § 5018 provides a greater remedy than that available through the use of
Texas Property Code section 52.007. It is most similar to Texas Civil Practice
and Remedies Code section 35.003, the domestication provision of the Texas
UEFJA. CPLR § 5401, aside from the two final clauses, is almost identical to
Texas's definition of a foreign judgment under Texas Civil Practice and
Remedies Code section 35.001.
17. The question before the Keeton court was only as to the applicability of the
New York UEFJA to "out-of-state" federal judgments, and the holding was
properly limited to that question. However, there is nothing in the legislative
history, the language of the statutes, or the reviewing court's logic that would
suggest a difference as to the applicability of the New York UEFJA to an "in-state" federal judgment. We do not read Keeton as affirming Knapp as to the
inapplicability of the New York UEFJA to "in-state" federal judgments but,
rather, as simply not addressing that question because it was not before the
court. 
18. Subsection 31.002(h) reads, "A court may enter or enforce an order under this
section that requires the turnover of nonexempt property without identifying
in the order the specific property subject to turnover." 
19. Though the statute provides that a creditor is "entitled to aid" from a court if
certain conditions exist, the granting of a turnover order is nevertheless
discretionary with the court. See Tex. Civ. Prac. & Rem. Code Ann. §
31.002(b) (Vernon 2008) ("The court may . . ."); Beaumont Bank, N.A. v.
Buller, 806 S.W.2d 223, 226 (Tex. 1991) (holding that trial court's decision on
turnover order is reviewed under abuse-of-discretion standard).
20. Prior to the enactment of subsection (h), there had been appellate challenges
to turnover orders as vague and unenforceable on the ground that the order
failed to state with specificity the property to be turned over. See, e.g., Thomas
v. Thomas, 917 S.W.2d 425, 434 (Tex. App.--Waco 1996, no writ); Bergman
v. Bergman, 828 S.W.2d 555, 557 (Tex. App.--El Paso 1992, no writ).
21. For example, there is no requirement under section 31.002 that the trial court
conduct an evidentiary hearing prior to granting relief under section 31.002(b). 
22. We consider only the evidence in the record that is properly before us--the
clerk's record on appeal and the court reporter's record of the hearing on
January 19, 2007. We do not consider the record of the hearing of May 18,
2007, because such hearing occurred after the ruling at issue in this appeal, see
Stephens County v. J.N. McCammon, Inc., 144 Tex. 148, 154, 52 S.W.2d 53,
55 (1932) (holding that appellate court reviews ruling of trial court based on
record before trial court at time that ruling is made), nor do we consider any
documents filed as appendices to briefs that do not appear in the official
record, see Till v. Thomas, 10 S.W.3d 730, 733-34 (Tex. App.--Houston [1st
Dist.] 1999, no pet.).
23. There were no evidentiary documents attached to the application for the
turnover order, and no hearing was held on the matter. At the hearing on
Tanner's motion to dismiss, at the conclusion of which the trial court granted
the turnover order, no evidence was presented on the issue of the turnover
order. 
24. Tanner cites no authorities or arguments pertinent to our review of the trial
court's appointment of a receiver apart from its grant of master-in-chancery
powers to the receiver. See Tex. R. App. P. 38.1(h) (requiring that contentions
on appeal be supported by clear and concise arguments and appropriate
citations to authorities and the record).
25. The Honorable J. Harvey Hudson, retired justice, Fourteenth Court of Appeals,
Houston, Texas, participating by assignment.