# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00335-CV

**W. T. J., Appellant**

**v.**

**S. L. S., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NOS. D-1-GN-07-00054 & D-1-GN-09-003918**
**HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

W. T. J. appeals from a district-court order granting turnover relief and post-judgment discovery in favor of his former wife, S. L. S.  We will affirm in part, reverse in part, and remand this cause to the district court.

## BACKGROUND

W. T. J. and S. L. S. divorced in 2002.  They entered into an agreed divorce decree, under which, among other things, they divided their property and agreed that, for a term of 156 months, W.T.J. would pay S. L. S. $18,000 per month in spousal support, with an additional payment of $18,000 due each September, for a total of thirteen $18,000 payments annually.  W. T. J. explains that he is an attorney, who, before and at the time of the divorce, had a very successful practice and was the sole owner of the professional corporation through which he practiced.  In December 2007,

however, W. T. J. had begun working as an employee of a law firm, and the office of his professional corporation was closed later that month, although W. T. J. continued to be paid by the corporation for time he spent "overseeing" its remaining business.

Beginning in August 2006, W. T. J. stopped making the agreed payments to S. L. S. In response, S. L. S. filed suit against him in 2007, seeking to recover payments due under the terms of the parties' agreement. The district court entered judgment against W. T. J. for the full amount of the unpaid payments, interest, and attorney's fees, totaling $553,555.60. W. T. J. did not appeal that judgment.

Shortly after that judgment was entered, W. T. J. entered into a rule 11 agreement with S. L. S. in which he agreed to pay S. L. S. $9,000 per month until October 2009 in return for her temporarily refraining from taking steps, such as garnishing his bank accounts, to enforce the 2007 judgment against him. However, under this agreement, he was still obligated to pay the $18,000 payments that had not been awarded in the 2007 judgment as they became due. The first of the $18,000 payments not awarded in the 2007 judgment became due in August 2008. W. T. J. did not make that payment. Instead, he paid only the $9,000 per month to keep S. L. S. from collecting on the 2007 judgment; upon the expiration of the rule 11 agreement in October 2009, W. T. J. also stopped making the $9,000 payments. S. L. S. filed suit in 2009 to recover the additional $18,000 payments due under the agreement between August 2008 and October 2010, which, per the terms of the agreed divorce decree, included a year of accelerated payments for W. T. J.'s failure to timely pay. The district court granted summary judgment in favor of S. L. S. for the full amount due, including interest, fees, and costs, resulting in a judgment against W. T. J. in the amount of $555,684.76. W. T. J. did not appeal that judgment.

2

S. L. S. obtained writs of execution on both judgments, which were returned nulla bona. *See Black's Law Dictionary* 1172 (9th ed. 2009) (defining "nulla bona" as notation made by sheriff on return when no seizable property belonging to judgment debtor was found within jurisdiction). In response to post-judgment discovery, S. L. S. received W. T. J.'s bank statements each month. The statements reflect that W. T. J. routinely deposited into his U.S. bank accounts amounts of money safely exceeding the amount of the monthly payments that he had agreed to make to S. L. S. W. T. J. emphasizes that his income had declined, between 2003 and 2007, to less than 24% of his average annual gross income before the divorce. He urges that this decrease in income made it impossible for him to make the required payments; the district court rejected this argument in both the 2007 and 2009 suits.

W. T. J. testified that, after the expiration of the rule 11 agreement, when S. L. S. was again entitled to take steps to enforce the judgments against him, he began depositing his money into different accounts each month, opened at least one new account, and regularly transferred the money in his accounts or made large withdrawals so that by the time S. L. S. received bank statements in response to discovery, the balances shown on those statements no longer reflected the money remaining in the accounts. He testified that he took these steps in order to thwart S. L. S.'s garnishment actions. S. L. S. notes that while W. T. J. successfully avoided S. L. S.'s attempts to recover on the judgments in her favor, he made "extraordinary" cash withdrawals and spent substantial amounts of money on vacations, including monthly rent on a vacation home overseas. In response to W. T. J.'s successful attempts to avoid paying the judgments against him, S. L. S. filed a "Motion to Impose Certain Conditions Regarding Judgment Debtor's Accounts, and for Turnover."

3

The motion sought a variety of relief. It asked the court to order W. T. J. to turn over his shares of common stock in his professional corporation, all income received or to be paid to him by his old limited liability partnership, the cash value of W. T. J.'s life insurance policies under which W. T. J.'s current spouse is a primary beneficiary, and certain statues. It further asked that the court order W. T. J. to provide S. L. S. with timely financial information regarding where he deposits money and where he spends it, including notifying S. L. S. on the same day when he opens a new account and notifying immediately when arranging for automatic deposits or depositing any funds, continuing to supplement his production of documents in response to post-judgment discovery, and identifying recipients and amounts of checks or other withdrawals as well as the consideration received by W. T. J. for these payments.

The district court granted the motion in part, ordering W. T. J. to turn over to the receiver the shares of stock in his professional corporation, any accounts and accounts receivable from the corporation, certain sculptures or other statuary or other artwork owned by the corporation, and the corporation's furniture. The court further ordered that W. T. J. provide all of the financial information requested by S. L. S., and it appointed a receiver to take charge of the property subject to turnover. The order states that after setting up an automatic deposit or depositing funds "from any source," W. T. J.

> will thereafter be enjoined from transferring or otherwise withdrawing funds
> (aggregate from all accounts or amounts in his possession, excluding retirement
> accounts) out of the account to the extent, and only to the extent, that any such
> withdrawal or transfer would deplete the balance of all W. T. J.'s monetary accounts
> (excluding retirement accounts) below the aggregate sum in all such accounts of
> $18,000, provided however, that if in any given calendar month payment out of any
> such monetary accounts is made by W. T. J. to S. L. S. (or funds are obtained by

4

S. L. S. through collection efforts from any of said monetary accounts) in the amount of at least $18,000, then W. T. J. is no longer enjoined from expending funds from any such accounts during the remainder of that calendar month.

Then, the order stated that the relief granted would be stayed and that S. L. S. would not attempt to garnish W. T. J.'s accounts for each calendar month that W. T. J. paid S. L. S. $18,000 towards the amounts owed in the 2007 and 2009 judgments.

W. T. J. appeals, asserting in three issues that the district court erred as a matter of law (1) by ordering W. T. J. to turn over to S. L. S $18,000 per month in order to "stay" the other relief ordered by the district court because S. L. S. failed to show that these payments could be made without using the proceeds of current wages; (2) by ordering W. T. J. to report detailed information regarding his deposits of funds received from any source and enjoining him from withdrawing or transferring money if it would lower the account balance below $18,000; and (3) by ordering that W. T. J.'s professional corporation be placed in receivership.

**DISCUSSION**

In his first issue, W. T. J. asserts that the district court erred as a matter of law when it ordered W. T. J. to pay S. L. S. $18,000 per month to stay the remainder of the relief ordered because, under the turnover statute, the court could not properly order W. T. J. to make these payments without first requiring proof that its order could be satisfied out of funds that are not exempt from attachment, execution, or seizure. We review orders under the turnover statute, section 31.002 of the civil practice and remedies code, for an abuse of discretion and will reverse the trial court only if we determine that it acted in an unreasonable or arbitrary manner, without reference to any

5

guiding rules and principles. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Moyer v. Moyer*, 183 S.W.3d 48, 51-52 (Tex. App.—Austin 2005, no pet.). To obtain relief under the turnover statute, a judgment creditor must prove (1) the judgment debtor owns property, including present or future rights to property; (2) the property is not exempt from attachment, execution, or seizure; and (3) the property "cannot readily be attached or levied on or by ordinary legal process," Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (West 2008), although the turnover order itself need not specify the property subject to turnover, *id.* § 31.002(h) (West 2008). *See Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

W. T. J. urges that he does not own property or a future right to property that is not exempt from attachment, execution, or seizure. He insists that satisfying a payment of $18,000 per month would require him to use at least some of his "current wages" or the proceeds thereof, which are exempt from collection under the turnover statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 31.0025 (West 2008) ("a court may not, at any time before a judgment debtor is paid wages for personal services performed by the debtor, enter or enforce an order that requires the debtor or any other person to turn over the wages for the satisfaction of the judgment"), .002(f) (West 2008) ("court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute"). S. L. S. responds that the district court could have inferred, and we must presume, that W. T. J. has nonexempt assets sufficient to pay $18,000 per month to S. L. S. because W. T. J. received between $1,500,000 and $2,300,000 in assets in the division of property when the parties divorced and because he disbursed over $300,000 from his professional corporation to himself. However, W. T. J. presented evidence that by 2010,

6

he had already sold or was attempting to sell his only remaining nonexempt assets and had made arrangements to deliver the proceeds to S. L. S.[1] He emphasizes that this is consistent with the writs of execution being returned nulla bona and asserts that he used whatever other money or assets he had in his possession on living expenses. He further stated that by 2005, he was even invading his retirement account "to make ends meet" after his income dropped precipitously. S. L. S. contradicted his assertion that he was struggling to make ends meet, explaining that instead, W. T. J. spent substantial sums of money on luxury items. But she did not present evidence contradicting W. T. J.'s assertions that he no longer possessed nonexempt assets from which he could satisfy the judgment. Indeed, in attempting to garnish W. T. J.'s accounts, S. L. S. would have been required to swear that, within her knowledge, W. T. J. did "not possess property in Texas subject to execution sufficient to satisfy the judgment." *Id.* § 63.001(3) (West 2008).

Rather than identifying exempt property from which W. T. J. could satisfy the $18,000 monthly payments, S. L. S. argues that because W. T. J. had deposited in his bank accounts over $50,000 per month in the twelve months preceding the district court's turnover order, he could (and can) afford the payments. W. T. J. responds by observing that the money he deposited was primarily composed of his current wages—the salary he received from the law firm he joined. He notes that the amount of income that he received from other sources, namely, his professional corporation, was less than $18,000 per month, with the result that at least some of his current wages or the proceeds thereof would have to be used to make such payments. Thus, whether or not W. T. J. could afford

---

[1] Instead of having W. T. J. testify at the hearing on the turnover order, the parties stipulated that W. T. J. would testify that the facts stated in his Response to S. L. S.'s motion to impose certain conditions on W. T. J.'s accounts and for turnover are true and correct.

to pay S. L. S. $18,000, evidence of the amount of W. T. J.'s deposits does not show that he could make the payments using nonexempt property. In the absence of evidence identifying nonexempt property belonging to W. T. J. sufficient to satisfy the proposed $18,000 payments, the turnover statute did not authorize the district court to grant relief, whether in the form of a required payment or an option to "stay" other relief, under the turnover statute. *See Tanner*, 274 S.W.3d at 322 (stating that before trial court may grant relief under turnover statute, it must "determine that the request for aid pending before the court falls within the scope of section 31.002," including determining that debtor has sufficient nonexempt assets to satisfy relief ordered). In granting relief when the statute's requirements had not been met, the district court abused its discretion. We sustain W. T. J.'s first issue.

In his second issue, W. T. J. complains that the district court erred as a matter of law by ordering W. T. J. to report detailed information regarding his deposits of funds received from any source and enjoining him from withdrawing or transferring money if it would lower the aggregate balance of his accounts below $18,000 in any given month, unless S. L. S. has already recovered $18,000 from W. T. J. in that month towards satisfaction of the judgments. We first address the injunction prohibiting W. T. J. from withdrawing or transferring money if it would deplete the balance of W. T. J.'s accounts below the aggregate sum of $18,000. S. L. S. defends this injunctive relief as being authorized by both the turnover statute and courts' inherent power to prevent judgment creditors from dissipating and transferring assets. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 31.002(a), 52.006(e) (West 2008). In her motion seeking to impose conditions on W. T. J. and asking for turnover, S. L. S. cited as authority only Texas Rules of Civil Procedure 308 and 621a

8

and "Tex. Civ. Prac. & Rem. Code §§ 31.001 *et seq.*" The motion primarily sought turnover relief,[2] although it also sought detailed post-judgment discovery and asked that W. T. J. be "barred from transferring [deposits] out of the account for a period of 30 days, subject to whatever conditions the Court deems appropriate to provide for maintenance of his basic needs." In requesting this injunctive relief, in her motion and at the hearing on the motion, S. L. S. did not address any of the prerequisites required for obtaining an injunction outside of the turnover statute. Accordingly, we conclude, as W. T. J. asserts, that S. L. S. sought this relief as part of the turnover order.

As we discussed above, demonstrating that a judgment debtor owns property that is not exempt from attachment, execution, or seizure is a prerequisite for obtaining relief under the turnover statute. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a); *Tanner*, 274 S.W.3d at 322. The evidence introduced in the district court showed that W. T. J. had depleted his accounts to the point that they held "nominal" balances. Although S. L. S. pointed to evidence that W. T. J. routinely deposited sums exceeding $18,000 into his accounts, she did not present evidence that these sums were nonexempt assets that could be subject to turnover. To the contrary, W. T. J. explained that because his income from sources other than his salary was below $18,000, and was expected to approach zero, money deposited into his accounts would be primarily, if not entirely, proceeds from his current wages. As such, the district court abused its discretion in enjoining him from withdrawing or transferring those proceeds under the turnover statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.025 (West 2008) (stating that court may not require debtor to turn over wages "at any time

---

[2] The motion also sought to withhold W. T. J.'s wages, but at the hearing on the motion, S. L. S. clarified that she was no longer pursuing this relief.

9

before a judgment debtor is paid wages for personal services performed by the debtor"); *Ex parte Prado*, 911 S.W.2d 849, 850 (Tex. App.—Austin 1995, orig. proceeding) (holding trial court could not enter turnover order requiring judgment debtor to pay judgment creditor $500 per month "without identifying what specific nonexempt property or rights thereto that he possessed or controlled which would enable him to comply with the order"). We sustain W. T. J.'s second issue as it relates to enjoining him from withdrawing money from his bank accounts if it would decrease the aggregate balance of his accounts below $18,000 in a given month.

Regarding W. T. J.'s complaint that the district court erred as a matter of law by ordering him to report detailed information regarding his deposits of funds received from any source, we observe that although he has listed this as part of his second issue for review, he does not discuss this issue further in the argument of his brief. Thus, W. T. J. has waived any complaint with regard to the portions of the district court's order that require him to provide this information to S. L. S. *See* Tex. R. App. P. 38.1. We overrule this portion of W. T. J.'s second issue.

W. T. J. asserts in his third issue that the trial court erred as a matter of law by ordering that W. T. J.'s professional corporation be placed in receivership because, according to W. T. J., placing the professional corporation in receivership might prejudice the rights of W. T. J.'s other creditors. Under the turnover statute, the court may bring into its custody the property of a judgment debtor, provided the property cannot readily be attached or levied on by ordinary legal process and "is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). As W. T. J. observes, his professional corporation is not a judgment debtor, but is an autonomous legal entity separate and distinct from its shareholders.

10

*See Newman v. Toy*, 926 S.W.2d 629, 631 (Tex. App.—Austin 1996, writ denied). But this does not mean that we necessarily must reverse the district court's order. In the absence of findings of fact made by the trial court, we must sustain its order on any legal theory shown in the evidence. *Id.*

W. T. J. does not dispute the evidence that he is the professional corporation's sole shareholder, who "might deal as he wishes with the corporation's monthly receipts and any of its other property." *See id.* And, in his response to S. L. S.'s motion, he "acknowledge[d] the power of [the district court] to order turnover of the [professional corporation] shares, which are W. T. J.'s nonexempt personal property," although he alleges that doing so might result in numerous creditors coming forward to collect on their debts. On appeal, W. T. J. changes his argument to contradict his previous acknowledgment that the court could turnover his shares by arguing instead that the district court should not have "lightly disregarded" the fiduciary duties that W. T. J. owes to his creditors. In support of his argument that the turnover statute cannot be applied to reach the shares or other assets of his professional corporation, W. T. J. cites federal court opinions and orders. As one of the cited courts has explained, although the professional corporation itself is not subject to a turnover order, a judgment debtor who is a sole shareholder "is subject to a turnover order reaching any shares he owns in the law firm and any of his other property related to the firm and his legal practice," including legal fees. *State Farm Mut. Auto. Ins. Co. v. Wilkins*, No. H-99-2822, 2008 U.S. Dist. LEXIS 70313, at *7-8 (S.D. Tex. Sept. 10, 2008). In light of the precedents cited by W. T. J. and in light of his acknowledgment that the district court could order turnover of the shares of the professional corporation, we cannot conclude that the district court abused its discretion in placing the assets of the corporation in receivership. *See Newman*, 926 S.W.2d at 631.

11

**CONCLUSION**

We reverse the portions of the district court's order that (1) enjoin W. T. J. from spending money deposited into his bank accounts if it would deplete the aggregate balance to below $18,000 in months that S. L. S. has not already collected this amount from him and (2) order W. T. J. to pay $18,000 to "stay" the remainder of the relief provided by the order.  We affirm the remainder of the order and remand this case to the district court for further proceedings not inconsistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed in Part; Reversed and Remanded in Part

Filed:   August 29, 2012