**Opinion issued April 20, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00284-CV

———————————

**GREAT VALUE STORAGE, LLC, WORLD CLASS CAPITAL GROUP, LLC, AND NATIN PAUL, Appellants**

**V.**

**PRINCETON CAPITAL CORPORATION, Appellee**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2019-18855**

---

## MEMORANDUM OPINION

This opinion addresses two appeals, docketed together as required by our Rules of Appellate Procedure.[1] In the first appeal, Great Value Storage LLC

---

[1] *See* TEX. R. APP. P. 12.2(c) ("*Multiple Notices of Appeal.* All notices of appeal filed in the same case must be given the same docket number.").

("Great Value") and World Class Capital Group LLC ("WCCG") appeal from a final judgment in favor of Princeton Capital Corporation ("Princeton") on its breach of contract claim. After the trial court granted Princeton's partial summary judgment, the court severed the remaining non-contract claims and entered final judgment. On appeal, Great Value and WCCG raise four issues challenging the propriety of the trial court's severance (issue 1) and the summary judgment (issues 2–4). They argue that the court erred by holding WCCG liable for breach of contract because the contract did not require it to make payments (issue 2). They also argue that the evidence to support the summary judgment was legally insufficient (issue 3) and untimely (issue 4).

After the severance rendered the summary judgment final, the trial court, on Princeton's motion, entered an order appointing a receiver and compelling production of documents and financial records. Great Value and WCCG appealed. They argue that the trial court abused its discretion by appointing a receiver under the Texas turnover statute because Princeton allegedly failed to present evidence that they owned nonexempt property (issue 1 of interlocutory appeal). In two issues, they challenge the content of the receivership order, specifically the requirement that judgment debtors turn over to the receiver all interests in limited partnerships or limited liability companies (issue 2 of interlocutory appeal) and the authorization for the receiver to seize the interest of judgment debtors in limited

liability companies of which they are members and to sell, manage, and operate these LLCs as the receiver thinks appropriate (issue 3 of interlocutory appeal). Finally, Great Value and WCCG argue that the trial court abused its discretion by setting the receiver's fees in advance (issue 4 of interlocutory appeal).

We affirm both the trial court's summary judgment and the order appointing a receiver.

### Background

Natin Paul is a real estate investor, who does business through a network of entities.[2] He is the sole member and manager of WCCG, which is the sole member and manager of Great Value, which owns, develops, and operates self-storage facilities in Texas and other states.

**The Note Purchase Agreement**

In July 2012, Great Value and WCCG entered into a Note Purchase Agreement ("NPA") with Capital Point Partners II, L.P. ("Capital Point"), the predecessor-in-interest to Princeton. Under the NPA, Great Value, defined as the "Company" in the agreement, executed two promissory notes in favor of Capital Point in exchange for money. The first note was in the principal amount of $2,000,000 and the second was in the principal amount of $500,000. The notes

---

[2]     *See WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995, at *1 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.).

were sold to Capital Point, "with the proceeds from the sale of said notes to be used to supply the working capital and other financing needs" of Great Value. The NPA required quarterly payments of accrued interest to Capital Point, beginning on December 31, 2012. The NPA did not, however, contemplate any periodic payments of principal, which would be due as a lump sum on the maturity date or upon acceleration based on default.

The NPA specified that interest accrued on the unpaid principal amount of the notes at the rate of 14% per annum and would "be calculated daily on the basis of a three hundred sixty (360) day year for the actual number of days elapsed in the period during which it accrues." The NPA provided for a default rate of interest, in the amount of 3% "in excess of the rates otherwise payable under the Transaction Documents." Interest was to be paid in arrears on the last day of each quarter. The NPA also included a provision called "Deferral of Interest:"

> (F) Deferral of Interest. Notwithstanding any other provision hereof, payment of accrued interest payable on the Notes which exceed twelve percent (12%) per annum, shall to the extent of such excess, be deferred ("PIK Interest"); provided, that all amounts deferred hereunder shall be due and payable on the Maturity Date (unless paid earlier at the Company's option) and no interest accrued thereafter may be deferred; provided further, however, that the Company may at its option and by written notice to the Holders at least five (5) Business Days prior to any date that interest shall be due and payable under subsection 1.2(c) [Payment of Interest and Related Fees], hereof, elect to pay any such PIK Interest in cash on such interest payment date. All deferred interest shall be capitalized and added to principal and interest shall accrue on all amounts so deferred

4

at the applicable rate set forth in subsections 1.2(a) [Interest] and 1.2(b) [Default Rate of Interest] and shall be compounded quarterly.

After execution of the NPA, it was amended twice and assigned once. The NPA was amended the first time in November 2014 to provide for a third note in the principal amount of $3,100,000.00. In March 2015, Capital Point sold and assigned the NPA and the three notes to Princeton. The NPA was amended the second time in May 2016 to extend the maturity date of all three notes from July 31, 2017 to December 31, 2018 and to defer nine months of then-past-due interest until the new maturity date.

**Default on the NPA**

On October 29, 2018, Princeton sent Great Value and WCCG a Notice of Default under the NPA asserting that a quarterly interest payment of $206,435.69 that was due in September 2018 was not made. In the letter, Princeton provided formal notice and informed Great Value and WCCG that they could cure the default by paying the past due interest by November 2, 2018. The letter also advised Great Value and WCCG that if the default was not cured, Princeton could immediately accelerate the notes under the NPA.

On November 16, 2018, Princeton sent WCCG and Great Value a "Notice of Acceleration and Demand for Payment in Full." Noting that the default had not been cured, it stated that Princeton elected to accelerate the notes and that as of the date of the notice, the total amount of debt was $7,122,607.95, which was

5

comprised of $6,783,671.33 in unpaid principal balance and $338,936.62 in unpaid interest. In the notice, Princeton also asserted its belief that Great Value made payments to WCCG and Paul in violation of the NPA's restrictions on paying certain dividends and distributions to owners.

Two months later, Princeton sent a payoff letter to Great Value indicating the amounts owed as of January 16, 2019, which were:

| | |
|---|---|
| Principal: | $ 5,600,000.00 |
| Payment-in-Kind Interest through 1/16/19: | $ 1,206,631.30 |
| Cash Interest through 9/30/18 (at non-default rate): | $ 206,435.69 |
| Cash Interest from 10/1/18 through 1/16/19 (at default rate): | $ 304,700.76 |
| Legal Fees, Costs, and Expenses: | $ 30,796.25 |
| TOTAL AS OF 1/16/2019: | $ 7,348,564.00 |
| Per Diem Interest | $ 3,211.39 |

**Princeton Files Suit**

In March 2019, Princeton filed suit against Great Value, WCCG, and Paul. Princeton alleged claims for: (1) breach of contract, based on failure to pay and Great Value's allegedly prohibited distributions; (2) unjust enrichment, based on alleged false representations and the retention of the proceeds from the notes; (3) money had and received, based on retention of the money from the notes and equity; and (4) fraudulent transfer under the Texas Uniform Fraudulent Transfer Act, based on the allegedly improper distributions made by Great Value. Princeton asserted that Paul is vicariously liable for the breaches and wrongful actions by Great Value and WCCG. Princeton also pleaded for attorney's fees, costs, and

expenses under the NPA and the Texas Business and Commerce Code (the Texas Uniform Fraudulent Transfer Act).

Great Value, WCCG, and Paul filed a general denial. But they did not fully participate in discovery.[3] Although they responded to Princeton's request for disclosure, their answers were not complete because they did not disclose the legal theories or factual basis of their defenses, nor did they identify any people who had knowledge of relevant facts. They did not provide any documents in response to Princeton's 18 requests for production, which included requests for some

---

[3] We note that the complexity and duration of the litigation in this case was increased, in part, by the litigation tactics employed in the trial court, particularly regarding discovery. *Cf. Brewer v. Lennox Hearth Products, LLC*, 601 S.W.3d 704, 707 (Tex. 2020) ("Lawyers are under a professional obligation to act with commitment and dedication to their clients' interests, but they are neither duty-bound nor permitted to press for every possible advantage under the imprimatur of zealous advocacy. The discretion to determine the trial tactics and litigation strategies to employ, while considerable, is cabined by ethical standards memorialized in sundry rules and statutes . . . ."); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.02 *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) ("In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter."). The Texas Lawyer's Creed, while aspirational and nonbinding, also states: "I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process." TEXAS LAWYER'S CREED—A MANDATE FOR PROFESSIONALISM, § III(17) (adopted November 7, 1989). In addition, we note the passage of time between the filing of motions in the trial court and the date when the trial court ruled on such motions in this case. *Cf. In re Tomball Tex. Hosp. Co., LLC*, No. 01-19-00242-CV, 2019 WL 3418569, at *4 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (orig. proceeding) (collecting cases in which relators challenged the trial court's delay in ruling on pending motions).

documents that the NPA entitled Princeton to see. Instead, they objected and refused to confer with Princeton's counsel regarding discovery. Princeton also sought to depose Paul, but Great Value and WCCG refused to produce him for a deposition. Princeton filed a motion to compel discovery, but the trial court did not rule on it.

**Summary judgment**

In October 2019, Princeton filed a motion for partial summary judgment on its breach of contract claim against Great Value and WCCG. Princeton argued that Great Value and WCCG were obligated to make quarterly interest payments under the NPA, failed to do so, and after notice failed to cure the default that began in September 2018. Princeton asserted that the principal and interest owed as of October 31, 2019 was $8,248,604.57, which included interest accrued since the September 2018 default. Princeton asserted that it was entitled to summary judgment because there were no genuine questions of material fact. In addition, Princeton expressly declined to seek summary judgment against Paul, whom Princeton maintained was personally liable under a theory of alter ego and vicarious liability. Princeton attached the following summary judgment evidence:

- The NPA;
- The first, second, and third promissory notes;
- The first and second amendments to the NPA;

- The assignment to Princeton;

- The notice of default, notice of acceleration and demand for payment in full, and payoff letter;

- Two newspaper articles from August 2019 regarding federal investigations into Paul's business activities; and

- An unsworn declaration from Gregory J. Cannella, the chief financial officer of Princeton.

In his declaration, Cannella attested that he is over 18 years old, qualified to make the declaration, and that the facts set forth are within his personal knowledge and are true and correct. He attested to the history of NPA and secured note transactions, through default, acceleration, and the final payoff letter. He attested to the balance owed, broken down by principal balance owed, payment in kind interest owed (a category of interest defined in the NPA), and other accrued interest. He further attested that "additional daily interest" would accrue from November 1, 2019 to December 31, 2019 at a rate of $3,260.34 per day, and that the daily interest accrual rate would increase on January 1, 2020 due to the capitalization of interest. Finally, Canella swore under penalty of perjury that the

declaration was true and correct.[4] The jurat did not include Cannella's middle name, date of birth, or address.

Great Value and WCCG responded with special exceptions and objections but without summary-judgment evidence. They argued that Cannella's unsworn declaration was not competent summary-judgment evidence because it was not notarized. They also objected that Cannella lacked personal knowledge to authenticate the NPA, the first amendment to the NPA, and the three notes because they preceded the assignment to Princeton. They likewise objected to statements in Cannella's declaration about the history of the transactions prior to the assignment to Princeton, arguing that Cannella lacked personal knowledge of those events. Great Value and WCCG objected to the newspaper articles as irrelevant and hearsay. They argued that Cannella's declaration referred to the "LPA" and that they could not discern if that was a reference to the NPA, the NPA along with the amendments to the NPA, or something else.

---

[4]

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of October 2019 in Katy, Fort Bend County, Texas.

_____
Gregory J. Cannella

10

Princeton replied that Cannella's declaration was proper summary-judgment evidence under chapter 132 of the Texas Civil Practice and Remedies Code. It also argued that because the relevant contracts were attached to its petition and Great Value and WCCG failed to file a verified denial, the contracts were admissible under Texas Rule of Civil Procedure 93.

Great Value and WCCG filed a sur-reply in response to Princeton's reply. They argued that Cannella's declaration failed to meet the jurat requirements in chapter 132 of the Texas Civil Practice and Remedies Code because it did not include his middle name, his address, or his birthdate. Great Value and WCCG also argued that the contracts attached to Princeton's pleading should not be considered for the purpose of summary judgment because pleadings are not evidence. And they argued, therefore, that they had no burden to produce summary-judgment evidence because Princeton had not carried its traditional summary judgment burden.

On November 15, 2019, Princeton filed a supplemental declaration in support of its motion for partial summary judgment, in which Cannella attested:

1.  On October 11, 2019, I signed the "Declaration of Gregory J. Cannella," attached as Exhibit 1 to Princeton's Motion for Summary Judgment filed with this Court on October 11, 2019.

2.  I confirm with this Supplemental Declaration that the statements made in my October 11, 2019 Declaration are true and correct, and I have the personal knowledge required to make this declaration.

11

Cannella signed his name below a jurat that read:

My name is Gregory Joseph Cannella. My date of birth is [redacted], and my address is [redacted street address], Katy, Texas, [redacted zip code], and United States of America. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Fort Bend County, State of Texas, on the 15th day of November 2019.

About seven months later, Princeton sent a letter to the trial court stating that the case was set for trial in early July 2020 and asking the court to rule on two pending motions: the motion to compel discovery and the motion for partial summary judgment. Princeton also indicated that granting the motion would make the bench trial unnecessary because its "remaining claims are alternative theories of relief." About seven months after the letter was filed, on January 22, 2021, the trial court granted partial summary judgment in favor of Princeton on its breach of contract claim against Great Value and WCCG.[5]

---

[5] The partial summary judgment stated:

> On this day, the Court considered Princeton's Motion for Partial Summary Judgment against Defendants [Great Value] and [WCCG], Defendants' Response and Special Objections to the Summary Judgment Evidence, and Princeton's Reply. Having reviewed these filings, the parties' pleadings, evidence and argument, the relevant authority and evidence, and having considered same, the Court is of the opinion that:

> Defendants' Objections to Princeton's summary judgment are OVERRULED, and

> Princeton's Motion for Partial Summary Judgment on its breach of contract claim is GRANTED as against Defendants Great Value Storage, LLC and World Class Capital Group LLC.

12

## Severance of Non-Contract Claims and Final Judgment

Princeton then moved to sever the non-contract claims—unjust enrichment, money had and received, fraudulent transfer, and vicarious liability—from the breach-of-contract claim. Princeton argued that the non-contract claims, which were asserted against Paul as well as Great Value and WCCG, were based on their allegations that Great Value, WCCG, and Paul "improperly transferred money away from Great Value to Paul and various entities in an effort to avoid paying the money owed to Princeton." Princeton also argued that Great Value, WCCG, and Paul had "refused to provide discovery in this case relevant to these claims," and that a motion to compel such discovery had been pending before the court for a year and a half. Princeton indicated that it sought severance to allow entry of a final judgment so that it could attempt to collect its judgment and that it would only proceed on its non-contract claims should those efforts fail.

Great Value and WCCG responded, arguing that severance was improper because "alter ego" is not a separate cause of action and because the breach-of-contract and non-contract claims are interwoven. Princeton replied, reiterating that it had pleaded non-contract claims beyond alter ego or vicarious liability. Princeton also maintained that Great Value and WCCG had filed their response and objections to cause delay.

Princeton filed a motion for entry of final judgment and attached a new declaration from Canella, in which he attested that the outstanding principal balance and accrued interest as of January 31, 2021 was $9,759,713.84. Princeton also attached the unsworn declaration of its attorney, Mark L.D. Wawro, which detailed the background of each lawyer or paralegal whose work was included in the attached, redacted billing records. Wawro also attested to the reasonableness of the fees charged and opined that Princeton had incurred reasonable attorney's fees in the amount of $150,887.50 as of the date of the declaration. On March 4, 2021, the trial court granted the severance and entered final judgment awarding Princeton approximately $9.7 million on its breach-of-contract claim against Great Value and WCCG.

Great Value and WCCG requested findings of fact and conclusions of law and filed a motion for new trial. In the motion for new trial, they argued that there was no evidence to support the breach-of-contract claim because Princeton's summary-judgment evidence included an inadmissible unsworn declaration with an incomplete jurat. Because the unsworn declaration was used to authenticate the contracts, Great Value and WCCG further argued that there was no evidence that there was a valid contract. The new trial motion was denied, and Great Value and WCCG appealed.

**The Receivership**

In late June 2021, Princeton filed a motion for post-judgment receivership under chapters 31 and 64 of the Texas Civil Practice and Remedies Code. Princeton asserted that Great Value and WCCG had completely refused to participate in discovery throughout the course of litigation and had refused to produce discovery regarding their assets. Relying on publicly available information, such as Great Value's web page that listed its storage locations, Princeton argued that Great Value had non-exempt assets that could be used to satisfy the judgment for $9.7 million. Similarly, Princeton relied on the web page for WCCG to argue that it also had non-exempt assets that could be used to satisfy the judgment.

Great Value and WCCG objected to the motion for appointment of a post-judgment receiver. They argued that Princeton's motion was not supported by evidence and was not specific as to which assets should be subject to turnover. Great Value and WCCG maintained that appointment of a receiver was premature when this Court had already ordered the parties to participate in mediation. They also opposed appointment of Seth Kretzer as receiver, based on his performance in an unrelated lawsuit.

On September 8, 2021, the trial court entered an order appointing a receiver to take possession and sell the leviable assets of Great Value and WCCG. Among other powers, the order stated:

> In addition, the Receiver is authorized to seize the membership interest of any Limited Liability Company in which Great Value Storage LLC or World Class Capital Group LLC is a member, and to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate.

## Emergency Motion on Appeal to Stay Receivership

Great Value and WCCG then filed a notice of appeal from the order appointing a receiver and an emergency motion asking this Court to stay the order appointing a receiver pending the appeal of the final judgment. In this motion, for the first time, appellants asserted that only Great Value, not WCCG, was obligated to pay under the NPA. They asserted that the written documents directly contradicted Princeton's claims that WCCG was liable for any unpaid debt. This Court temporarily stayed proceedings under the order appointing a receiver and requested written responses to the motion. The receiver informed this Court that Great Value and WCCG had not superseded the judgment. Princeton argued that no emergency existed and that Great Value and WCCG could protect their rights by supersedeas. This Court granted the motion to stay the trial court's order appointing a receiver, abated the appeal, and remanded to the trial court for a

determination of whether Princeton's rights could be adequately protected by Great Value and WCCG superseding the judgment.

**Supersedeas**

In the trial court, Great Value filed an unsworn declaration stating that the "(negative) net worth of [Great Value] as of October 31, 2021 is ($5,845,797)." In lieu of a supersedeas bond, counsel for appellants deposited in the court's registry $100.00 each, on behalf of Great Value and WCCG. We withdrew the stay of the order appointing a receiver and reinstated the appeal on the active docket because Great Value failed to comply with this court's prior order to obtain from the trial court a determination concerning supersedeas. Princeton has contested the declarations of net worth filed by Great Value and WCCG. The appellate record does not include an order determining Princeton's challenge to the declarations of net worth, and no issue regarding supersedeas is properly before this Court in this appeal.

## Analysis

This case combines two appeals. First, Great Value and WCCG appealed the final summary judgment in favor of Princeton. Second, Great Value and WCCG appealed the order appointing a receiver. We will address these in turn.

17

## I. Appeal from final summary judgment

### A. Severance

In their first issue on appeal from the final summary judgment, Great Value and WCCG argue that the trial court abused its discretion by severing the non-contract claims. Princeton asserts that Great Value and WCCG have waived this argument.

Generally, to preserve a complaint for appellate review, the complaining party must present the complaint to the trial court by timely request, objection, or motion. TEX. R. APP. P. 33.1(a). "A party's argument on appeal must comport with the complaint made in the trial court." *Amerjin Co., LLC v. Ashby LLP*, No. 01-18-00231-CV, 2020 WL 1522823, at *11 (Tex. App.—Houston [1st Dist.] Mar. 31, 2020, pet. denied) (mem. op.). The complaint raised in the trial court must state the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a). "The reason for the requirement that a litigant preserve a trial predicate for complaint on appeal is that one should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time." *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982).

In the trial court, Great Value and WCCG objected to the severance on the grounds that it would be improper to sever the "claim" for vicarious liability under

a breach of contract theory. Great Value and WCCG noted that there is no independent cause of action for alter ego or vicarious liability in Texas.[6] They argued that to determine whether to impose vicarious liability, the court would "need to hear evidence of how the various alleged (severed breaches) resulted in vicarious liability and presumably how the alleged fraudulent transfer by the Corporate Defendants may have contributed to the liability in the severed cause of action." They did not make any argument about the propriety of severing independent claims for unjust enrichment, money had and received, and fraudulent transfer from the breach of contract claim.

On appeal, Great Value and WCCG argue that the non-contract claims (unjust enrichment, money had and received, and fraudulent transfer) could not be asserted independently because they involve the same facts and issues as the breach-of-contract claim. They argue that the non-contract claims sought to recover the same damages as the contract claim. They also argue that non-contract claims are interwoven with the breach of contract claim and, therefore, severance was improper.

---

[6]  *See Wilson v. Davis*, 305 S.W.3d 57, 68 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Piercing the corporate veil is not a cause of action but is instead a means of imposing liability for an underlying cause of action.").

Because Great Value and WCCG did not make the same argument on appeal that it made in the trial court, this issue is waived. *See* TEX. R. APP. P. 33.1(a); *Amerjin Co.*, 2020 WL 1522823, at *11.

We overrule the first issue on the appeal from the final summary judgment.

## B.  Summary judgment

The second, third, and fourth issues concern the trial court's grant of summary judgment. The second issue asserts that the trial court erred by granting summary judgment because WCCG is not contractually obligated to make payments to Princeton by any of the relevant agreements. The third and fourth issues concern the unsworn declarations filed in support of Princeton's traditional summary judgment motion. The third issue asserts that the unsworn declaration on which the summary judgment was based was legally insufficient to establish damages because it did not state how damages were calculated or that all offsets, payments, and credits were included. The fourth issue challenges whether the trial court could have properly relied on the late-filed amended unsworn declaration when the trial court did not expressly grant leave to file the amended declaration.

### 1.  WCCG waived its contention that it was not contractually obligated to Princeton.

We review de novo the trial court's ruling on a motion for summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). To prevail on a traditional motion for summary judgment, the movant must show that no genuine

issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84. When a plaintiff moves for summary judgment on its own claim, it must prove conclusively all essential elements of its cause of action. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Ordinarily, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c); *see D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) ("A non-movant must present its objections to a summary judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived.").

In the trial court, WCCG argued that Cannella's unsworn declaration could not be considered because it was not an affidavit. WCCG also argued that Cannella could not authenticate the contracts that were executed before they were assigned to Princeton, nor did he have the requisite personal knowledge to testify about them. WCCG called those statements hearsay. WCCG objected that a reference to the "LPA," which appears to be a typographical error, was meaningless because

21

"LPA" was an undefined term. WCCG also argued that one statement in Cannella's declaration was contradicted by the exhibit to which it referred. In a sur-reply filed in response to Princeton's reply, WCCG argued that Cannella's unsworn declaration had defects in form. Specifically, WCCG asserted that Cannella's middle name, address, and birth date were omitted from the declaration.

On appeal, WCCG argues that the court erred by granting summary judgment against it because it was not the maker on the promissory notes, not expressly liable for payments under the NPA, and not a guarantor on any of the relevant agreements. Because this argument was not made in the trial court, under TEX. R. APP. P. 33.1, it is waived, and under TEX. R. CIV. P. 166a(c), it cannot be the basis for reversal of summary judgment. *See Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 196 (Tex. 2022) ("In an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court.").

WCCG argues that it was not required to preserve error to raise this issue on appeal because its contention is that Princeton failed to conclusively prove its entitlement to summary judgment and a "non-movant's failure to . . . respond cannot supply by default the grounds for summary judgment or the summary judgment proof necessary to establish the movant's right" to summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) (citing

22

*City of Houston*, 589 S.W.2d at 678). A non-movant "needs no answer or response to a motion for summary judgment in order to urge on appeal that the movant's proof was insufficient to establish as a matter of law the specific grounds relied on by the movant." *Fantastic Homes, Inc. v. Combs*, 596 S.W.2d 502, 502 (Tex. 1979) (per curiam).

WCCG's argument is not that Princeton's motion lacked evidentiary support or failed to assert the grounds for summary judgment. Rather, WCCG urges an interpretation of the parties' contract and its amendments. Although WCCG was the sole member and manager of Great Value and a party to the NPA, it argues that it cannot be held liable for nonpayment because the NPA expressly obligated only Great Value to make payments to the holder of the notes. But a provision in section 5 of the NPA ("REPRESENTATIONS AND WARRANTIES") states that WCCG was "causing to be paid" Great Value's debts and debts related to the storage facilities "as they become due."

WCCG did not raise its contract interpretation argument in the trial court in response to Princeton's motion for summary judgment, and on appeal, its argument does not challenge Princeton's evidence as insufficient or failing to demonstrate the grounds for summary judgment. We therefore conclude that this was not the kind of issue for which no preservation is required, and it is the kind of issue which must be expressly presented to the trial court in response to a motion for summary

judgment. *Compare Fantastic Homes*, 596 S.W.2d at 502, *with Mitchell*, 649 S.W.3d at 196.

We hold that the second issue is waived, and we overrule it.

## 2. The court properly considered Cannella's supplemental declaration as summary-judgment evidence.

In the fourth issue, Great Value and WCCG argue that the original declaration was not competent summary judgment evidence because it was not an affidavit and did not comply with the formal requirements in section 132.011 of the Texas Civil Practice and Remedies Code. They also argue that the supplemental declaration did not remedy the deficiencies because it was filed after the motion for summary judgment and without leave of court.

### Affidavits

In general, affidavits are competent summary judgment evidence. *See* TEX. R. CIV. P. 166a(c) (including affidavits in list of types of evidence to be considered by court in granting a motion for summary judgment). "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Id.* Rule 166a provides rules for the form of affidavits used to support or oppose summary judgment:

**(f) Form of Affidavits; Further Testimony.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

TEX. R. CIV. P. 166a(f).

**Unsworn declarations**

Unsworn declarations are also generally competent summary judgment evidence. *See* TEX. CIV. PRAC. & REM. CODE § 132.001(a) ("[A]n unsworn declaration may be used in lieu of a[n] . . . affidavit required by statute or required by a rule, order, or requirement adopted as provided by law."); *McMahan v. Izen*, No. 01-20-00233-CV, 2021 WL 3919219, at *8 (Tex. App.—Houston [1st Dist.] Sept. 2, 2021, no pet.) (mem. op.) (recognizing unsworn declaration under section 132.001 as summary-judgment evidence in suit on sworn account); *see also Hernandez v. Adams*, No. 01-19-00743-CV, 2020 WL 6787515, at *2 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, no pet.) (mem. op.) (noting that Texas Rules of Evidence 803(6) and 902(10) provide that business records may be admissible if accompanied by qualifying affidavit or unsworn declaration).

An unsworn declaration must be in writing and "subscribed by the person making the declaration as true under penalty of perjury." TEX. CIV. PRAC. & REM. CODE § 132.001(c)(2); *see Dominguez v. State*, 441 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("The inclusion of the phrase 'under penalty of perjury' is the key to allowing an unsworn declaration to replace an affidavit."); *see also Tex. Dep't of Pub. Safety v. Caruana*, 363 S.W.3d 558, 564 (Tex. 2012) (emphasizing that statements in unsworn declaration are "subscribed" as true under penalty of perjury and thus "[t]he verity of a declaration is . . . assured by the criminal penalties for perjury").

The statute further provides that an unsworn declaration "must include a jurat in substantially" the form set forth in section 132.001(d):

> My name is __[First___Middle_____Last]____, my date of birth is_____, and my address is _[Street Address, City, State, Zip Code]_____, and __[Country]_____. I declare under penalty of perjury that the foregoing is true and correct.
>
> Executed in _____ County, State of _____, on the _____day of ___[Month]_____, __[Year]_____.
>
>                    __[signature]_____
>                    Declarant

*Id.* § 132.001(d).

### Time for filing affidavits supporting summary-judgment motions

In general, affidavits and declarations used to support a motion for summary judgment must be filed and served twenty-one days before the hearing on the

motion. TEX. R. CIV. P. 166a(c). However, with leave of court and notice to opposing counsel, affidavits and declarations may be filed and served outside that deadline. *See id.* Ordinarily, when a record is completely silent about whether the court granted leave for late filing of summary-judgment evidence, a court of appeals will presume that the trial court did not consider the response. *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020). But "a recital in a summary-judgment order that the trial court considered 'the evidence' without qualification or limitation overcomes that presumption." *Id.* at 262.

**Cannella's supplemental declaration strictly complied with the statute.**

In this case, it is undisputed that neither of Cannella's declarations were affidavits. Cannella's original declaration, which was attached to the partial motion for summary judgment, stated that he swore under penalty of perjury that the declaration was true and correct, but the jurat did not include Cannella's middle name, date of birth, or address. In its response to the motion for partial summary judgment, WCCG asserted that Cannella's middle name, address, and birth date were omitted from the declaration, and therefore it could not be considered as summary judgment evidence.

While some courts of appeals have recognized substantial compliance with the statutory jurat as sufficient, the Supreme Court of Texas has held that omission of the declarant's date of birth meant that an unsworn declaration could not be

accepted in lieu of an affidavit even though the declaration stated that it was made under penalty of perjury. *See Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 702 & n.15 (Tex. 2019) (omission of birth date from unsworn declaration rendered it no evidence). *But see Bonney v. U.S. Bank Nat'l Ass'n*, No. 05-15-01057-CV, 2016 WL 3902607, at *3 (Tex. App.—Dallas July 14, 2016, no pet.) (mem. op.) (concluding declaration substantially complied with section 132.001 even though declarant omitted her middle name, address, and date of birth), *and United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 813 (Tex. App.—El Paso 2014, no pet.) (holding, "[f]ailure to include the declarant's birthdate or address is a formal defect having no effect on whether a false statement would render the declarant liable for perjury" and did not render declaration inoperative or convert it to unsworn hearsay).

We do not, however, need to wrestle with the question of whether Cannella's original declaration was inoperative due to its failure to strictly comply with the statute, because after Great Value and WCCG pointed out the formal defects, Princeton filed a supplemental declaration in which he swore under penalty of perjury that the statements in his original declaration are true and correct, and based on his personal knowledge. The supplemental declaration included a jurat that strictly complied with the statutorily-prescribed jurat.

**The record supports a presumption that the trial court granted leave to late-file the supplemental declaration.**

Great Value and WCCG argue that the supplemental declaration was filed without leave of court and therefore does not constitute summary-judgment evidence. We disagree. The supplemental declaration was filed and served on November 15, 2019—more than 14 months before the trial court ruled on the partial motion for summary judgment. The order granting the motion for partial summary judgment included the following recital:

> On this day, the Court considered Princeton's Motion for Partial Summary Judgment against Defendants Great Value Storage LLC and World Class Capital Group LLC, Defendants' Response and Special Objections to the Summary Judgment Evidence, and Princeton's reply.

This recital states that that the court considered "the evidence" without qualification or limitation. We therefore presume that the trial court granted leave to file the late-filed summary judgment evidence and considered the supplemental declaration. *See B.C.*, 598 S.W.3d at 262.

We overrule the fourth issue.

### 3. Evidence of the Amount of Damages

In the third issue, Great Value and WCCG argue that Cannella's original declaration "as well as any later damage calculation" was conclusory as to the amount of damages and did not demonstrate how damages were calculated. Conclusory affidavits and unsworn declarations "are not credible, nor susceptible

to being readily controverted," and therefore they cannot support a motion for summary judgment. *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). "[A]n objection that an affidavit is conclusory is an objection to the substance of the affidavit that can be raised for the first time on appeal." *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *accord, e.g.*, *Cty. Real Estate Venture v. Farmers & Merchants Bank of Long Beach*, No. 01-13-00530-CV, 2015 WL 591646, at *2 (Tex. App.—Houston [1st Dist.] Feb. 12, 2015, no pet.) (mem. op.) (objection that affidavit is conclusory is defect in substance that can be raised for the first time on appeal); *Petroleum Analyzer Co. LP v. Franek Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *20 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.) (same); *Gellatly v. Unifund CCR Partners*, No. 01-07-00552-CV, 2008 WL 2611894, at *4 (Tex. App.—Houston [1st Dist.] July 3, 2008, no pet.) (mem. op.) (same). We construe the third issue as a challenge to the evidence to support the amount of damages in the final summary judgment that did not need to be preserved in the trial court.

On appeal, Great Value and WCCG assert that Cannella's declaration was insufficient because it states only the legal conclusion that they breached the NPA by failing to make payments when due. They assert that there is "no evidence of when payments were or were not made or of the amounts of any payments made or

30

not made." They also assert that the declaration stated only the various amounts of interest and did not provide factual support for the damage calculation. They assert that Cannella's declaration failed to provide information about what payments were made, when interest and fees were incurred, the relevant interest rates, and whether the balance included all offsets, payments, and credits.

"An affidavit from a company officer claiming personal knowledge of the issue and of the company's records can be used to support summary judgment." *Del Mar Capital, Inc. v. Prosperity Bank*, No. 01-14-00028-CV, 2014 WL 5780302, at *4 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, no pet.) (mem. op.) (citing *Brown v. Mesa Distributors, Inc.*, 414 S.W.3d 279, 287 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). "However, such an affidavit is sufficient summary judgment evidence only when it gives detailed accounts of the facts it attests to or when it provides supporting documents which tend to support the statements made." *Brown*, 414 S.W.3d at 287. When a company officer's affidavit omits the detailed information that supports the officer's statements, it is conclusory. *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990—A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008) (affidavit is conclusory when it states "a conclusion without any explanation" or asks the factfinder to "take [the affiant's] word for it").

31

Whether an affidavit or declaration and its supporting documents provide sufficient detail depends on the facts of the case. *E.g.*, *Tyhan, Inc. v. Cintas Corp. No. 2*, No. 01-18-00027-CV, 2018 WL 5539419, at *3 (Tex. App.—Houston [1st Dist.] Oct. 30, 2018, no pet.) (mem. op.); *Del Mar Capital*, 2014 WL 5780302, at *4. For example, in *Tyhan*, the claim was that the customer breached a contract with Cintas for uniform rental and associated services. *Tyhan*, 2018 WL 5539419, at *1. Two-and-a-half years remained on the five-year contract. *Id.* Cintas sought past due amounts for goods and services rendered, liquidated damages for the remainder of the contract term, and the replacement cost for lost and damaged items. *Id.* The trial court rendered summary judgment in favor of Cintas. *Id.*

The court of appeals reversed because the general manager's summary-judgment affidavit was conclusory. *Id.* at *3. The general manager averred that Tyhan owed a balance of $11,230.16, but he did not explain how that sum was calculated or attach records supporting it. *Id.* Four invoices that were attached to the summary-judgment motion totaled just under $600, and therefore they did not support the $11,230.16 balance stated in the affidavit. *Id.* In addition, the general manager averred that Tyhan owed $34,621.43 in liquidated damages, which was the product of the 139 weeks remaining on the contract and a weekly invoice amount of $498.15. *Id.* But the affidavit did not explain how the $498.15 weekly invoice amount was calculated, and no supporting evidence was attached. *Id.*

Similarly, the general manager averred that Tyhan owed $2,823 for lost or damaged items, but he did not identify which items were lost or damaged or their replacement costs. *Id.* Because the amounts stated in the affidavit were without evidentiary support, the court of appeals reversed the summary judgment. *Id.*

A similarly case-specific approach was used in *Del Mar Capital*. 2014 WL 5780302, at *1–4. After an investment company fell behind on its monthly payments of a note, the note was modified, and real property was used as collateral for the modified note. *Id.* at *1. When the investment company again fell behind on payments, the bank foreclosed on the property and sold it for $55,000, which only partially satisfied the debt. *Id.* The bank sued for the deficiency, and it filed a motion for summary judgment supported by an affidavit from the bank's president, the original and amended notes, and the security agreement for the foreclosed property. *Id.* The affidavit stated a total deficiency of $144,802.93, which was comprised of $123,405.18 in principal, $4,539.55 in interest, and $16,858.20 in "late charges and fees." *Id.*

The court of appeals held that the affidavit was conclusory because neither the affidavit itself nor the other summary-judgment evidence supplied the evidentiary support for the amounts stated in the affidavit. *Id.* at *4. For example, the summary-judgment evidence did not establish what payments had been made, how much principal remained, when the late charges were incurred, or the identity

33

of any other fees. *Id.* In addition, the court of appeals noted that the calculation of the interest rate depends on knowledge of the principal remaining at each point in the calculation and that the modified agreement included "lengthy and detailed instructions on determining the interest rate" that reference "information not contained in the summary-judgment evidence, such as the Wall Street Journal's prime lending rate." *Id.* at *4 and n.2.

In this case, three declarations from Cannella were before the court when it rendered final summary judgment. The first two were the original and the supplemental declaration produced to support Princeton's motion for summary judgment. The third declaration was attached to the motion for entry of judgment.

In the first declaration, Cannella averred that he was the Chief Financial Officer for Princeton, and he stated the contractual history and the initial principal amounts of the three promissory notices. He stated the totals for the amounts of Principal Balance, PIK Interest, and Accrued Interest. He stated that the total amount of unpaid principal and interest due as of October 31, 2019 was $8,248,604.57, and that additional daily interest would accrue from November 21019 through the end of December 2019 at a rate of $3,260.34 per day. He also stated: "As of the date of January 1, 2020, daily interest will accrue at a higher rate due to the capitalization of interest."

34

Attached to his declaration were the NPA, the promissory notes, the amendments to the NPA, the assignment to Princeton, the notice of default, notice of acceleration and demand for payment in full, and a payoff letter, and a newspaper article. The NPA stated that interest would accrue at 14%, or 17% when in default, but any amount of interest above 12% would be deferred as PIK Interest, added to the principal and compounded quarterly. The NPA described how interest would be calculated: on a per diem basis, based on a 360-day year, multiplied by the number of days in each quarterly interest period. Interest was to be paid in arrears at the end of each quarter. No principal payments and no PIK interest payments were due until maturity. The three notes included the dates of issuance and the original principal amounts.

The second amendment to the NPA stated the dates for which interest payments were not made, triggering default provisions of the NPA: (1) the period from July 1, 2015 through September 30, 2015; (2) the period from October 1, 2015 through December 31, 2015; and (3) the period beginning on January 1, 2016 through March 31, 2016. The second amendment to the NPA incorporated these past due amounts into the PIK Interest, which was capitalized, added to the principal, and on which interest accrued at the rates in the NPA and was compounded quarterly. The second amendment to the NPA extended the maturity date until December 31, 2018.

The notice of default letter, dated October 29, 2018, states the date of default for failure to pay a quarterly interest payment due on September 30, 2018. It also states the amount of interest due as $206,435.69 and the original principal loan amounts based on the notes. The November 16, 2018 notice of acceleration and demand for payment in full again states the date of default, the amount of past due interest, and the original principal loan amounts based on the notes. The notice of acceleration and demand for payment demanded payment of $7,122,607.95, which consisted of an unpaid principal balance of $6,783,671.33. In a footnote, Princeton stated: "The outstanding principal balance consists of the original principal balance of $5,600,000 *plus* capitalized paid-in-kind [PIK] interest in the amount of $1,183,671.33." The letter also sought "accrued and unpaid interest" of $338,936.62. Princeton indicated that "the interest will continue to accrue on the unpaid principal balance at the default rate until the Debt has been paid in full," and that the "default rate was implemented as of the effective date of October 1, 2018 (i.e., the day following the occurrence of the Noticed Default)."

The January 16, 2019 payoff letter was also attached to Cannella's declaration as summary-judgment evidence. It specified the amounts owed as of the date of the letter as:

Principal: $ 5,600,000.00
Payment-in-Kind Interest through 1/16/19: $ 1,206,631.30
Cash Interest through 9/30/18 (at non-default rate): $ 206,435,.69
Cash Interest from 10/1/18 through 1/16/19 (at default rate): $ 304,700.76

| | |
|---|---:|
| Legal Fees, Costs, and Expenses: | $ 30,796.25 |
| TOTAL AS OF 1/16/2019: | $ 7,348,564.00 |
| Per Diem Interest | $ 3,211.39 |

The letter stated: "The per diem [interest] rate adjusts quarterly as a result of the payment-in-kind features set forth in the Note Purchase Agreement."

Finally, the court had an additional declaration from Cannella before it when it rendered final judgment. In this declaration, dated January 28, 2021 and attached to Princeton's motion for entry of judgment, Cannella stated:

. . . .

2. I am currently employed as the Chief Financial Officer of Princeton Capital Corporation ("Princeton"). I graduated from Stephen F. Austin State University with a B.B.A. in Management, and from The University of Houston with an M.B.A. in Accounting and Finance. I am a Certified Public Accountant in the State of Texas.

3. As CFO of Princeton, I perform financial analysis for many of Princeton's investments, including the calculation of interest. I calculated the amount of Great Value and World Class's interest according to the express terms of the Agreement.

4. On October 14, 2019, I submitted a Declaration in support of Princeton's Motion for Partial Summary Judgment, in which I calculated Princeton's then-current damages on the unpaid principal and interest amounts owed by Great Value Storage, LLC and World Class Capital Group, LLC.

5. I have updated the interest calculation as of January 31, 2021:

| Total Amounts Due at: | 01/31/21 |
|---|---:|
| Principal: | $5,600,000.00 |
| PIK Interest: | 1,493,919.06 |
| Cash Interest: | 2,665,794.78 |

| | $9,759,713.84 |
|---|---|

6. The total amount of unpaid principal and interest owed by Great Value and World Class according to the terms of the Agreement is **$9,759,713.84.**

The trial court entered final judgment based on the $9,759,713.84 amount in Cannella's January 2021 declaration. This amount did not include legal fees, costs, or expenses.

Applying the case-specific analytical approach in this case leads to a different conclusion than we reached in *Tyhan* and *Del Mar Capital*. In *Tyhan*, we concluded that the summary-judgment affidavit was conclusory because neither the affidavit nor the attached documentation provided evidentiary support for the numbers used by the general manager to compute the liquidated damages and no information from which the replacement cost of lost and damaged uniforms could be calculated. *Tyhan*, 2018 WL 5539419, at *1–3. In *Del Mar Capital*, we concluded that the summary-judgment affidavit was conclusory because neither the affidavit nor the attached documentation provided evidentiary support for the balances that the bank manager averred were owed. *Del Mar Capital*, 2014 WL 5780302, at *1–4. We noted that even the interest rates themselves depended on information that was not in the summary-judgment evidence. In both cases, what was lacking from the affidavits and the attached documentation or other summary-

judgment evidence was proof of the information needed to calculate the amount of money the plaintiffs in each case maintained was owed.

This case is different. Here, Cannella's declarations must be read in concert with the attached documentation. In this case, the attached documentation provided all the information needed to calculate the total amount owed, including: (1) regular and default interest rates; (2) PIK interest; (3) dates when the notes were in default; (4) initial principal; (5) the methods for calculating regular and default interest and how to compound and capitalize the PIK interest. Because Cannella's declarations and attachments included both the methods to be used to calculate the amount due and the information to be used in those calculations, we conclude that it was not conclusory.

On appeal, Great Value and WCCG focus their appellate argument only on Cannella's declarations, without any meaningful consideration of the additional evidence attached to the declarations, which we have concluded provided the evidentiary support that Great Value and WCCG have argued is absent. Contrary to Great Value and WCCG's assertions, the record on appeal includes evidence of when payments were not made and the amounts of accrued unpaid interest as well as relevant interest rates and when interest was incurred.

We overrule the third issue.

**II.     Appeal from order appointing a receiver**

In the appeal from the order appointing a receiver, Great Value and WCCG raised four issues. First, they argued that Princeton failed to present evidence that they owned nonexempt property. Second, they argued that the trial court abused its discretion by ordering them to turn over to the receiver all interests they held in any limited liability company and limited partnership. Third, they assert that the trial court abused its discretion by authorizing the receiver to (a) seize the membership interest of any limited liability company in which they are members and (b) sell, manage, and operate the limited liability company as the receiver deems appropriate. Fourth, they argue that the trial court abused its discretion by setting the receiver's fees in advance in the order appointing a receiver and without requiring evidence to establish the reasonableness of the fee.

**A.     Waiver**

Great Value and WCCG filed an objection to Princeton's motion for post-judgment receivership. In that objection, they asserted that Princeton's motion was not supported by evidence, the motion was insufficient because it did not specifically identify the non-exempt property subject to turnover relief, and that the individual Princeton requested be appointed as receiver should not be appointed. On appeal, they argue about specific provisions that were in the draft order that

was attached to the motion for appointment of a post-judgment receiver and which Princeton expressly asked the court to enter.

Great Value and WCCG argue that their general objection to entry of the order appointing a receiver was sufficient to preserve error as to these specific arguments that were never raised in the trial court. "Our rules regarding preservation are clear that, with limited exceptions, a party cannot obtain reversal of a trial court's judgment on appeal based on an error that was never raised in the trial court." *Interest of G.X.H.*, 627 S.W.3d 288, 294 (Tex. 2021); *see* TEX. R. APP. P. 33.1(a) (general rule for error preservation). The second, third, and fourth issues in the appeal from the order appointing a receiver were not presented in the trial court, and thus these arguments do not comport with the complaints made in the trial court. *See Amerjin Co.*, 2020 WL 1522823, at *11. We conclude that these issues are waived, and we overrule them.

### B. Appointment of receiver

In their first issue, Great Value and WCCG argue that the trial court erred by appointing a receiver. They assert that Princeton presented no evidence that Great Value and WCCG owned nonexempt property. Great Value and WCCG assert that Princeton provided no more than its application and argument of counsel, which is not evidence. *See Cleveland v. Taylor*, 397 S.W.3d 683, 693 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("Neither an attorney's arguments nor the pleadings

or motions of a party constitute evidence."). A party may bring an interlocutory appeal from an order appointing a receiver. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1).

We review a trial court's order appointing a receiver under the turnover statute for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Guerinot v. Wetherell*, No. 01-12-00194-CV, 2013 WL 2456741, at *3 (Tex. App.—Houston [1st Dist.] June 6, 2013, no pet.). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or when it acts without reference to any guiding rules or principles. *Beaumont Bank*, 806 S.W.2d at 226.

The sufficiency of the evidence to support a turnover award or an order appointing a receiver is "a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order." *Beaumont Bank*, 806 S.W.2d at 226; *see Guerinot*, 2013 WL 2456741, at *3 (lack of evidence of leviable assets is a relevant factor in assessing whether the court abused its discretion). But the lack of evidence does not "automatically invalidate" the order. *Hamilton Metals, Inc. v. Glob. Metal Servs., Ltd.*, 597 S.W.3d 870, 879 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). We will not reverse the court's order when there is some evidence to support it, nor will we reverse a turnover

order due to a court's erroneous legal conclusion when the order is sustainable for any reason.[7] *Beaumont Bank*, 806 S.W.2d at 226.

"The Texas turnover statute provides judgment creditors with a procedural device to assist them in satisfying their judgment debts." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018); *accord Warwick Oil & Gas, Inc. v. FBS Properties, Inc.*, No. 01-14-00290-CV, 2015 WL 3637988, at *8 (Tex. App.—Houston [1st Dist.] June 11, 2015, no pet.) ("The turnover statute is a purely procedural device by which creditors may reach nonexempt assets of debtors that are otherwise difficult to attach or levy on by ordinary legal process.").

Section 31.002, "Collection of Judgment Through Court Proceeding," provides:

> (a)     A judgment creditor is entitled to aid from a court of appropriate jurisdiction, including a justice court, through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is

---

[7]     *Cf.* Bradley J. B. Toben, Article 3827a and the Maturation of the Creditor's Bill Remedy in Texas, 37 BAYLOR L. REV. 587, 633 (1985) (commenting on predecessor statute to TEX. CIV. PRAC. & REM. CODE §31.002 and recommending that to balance debtor's right to his property and creditor's ability to satisfy judgment, courts "should balance the following factors in determining whether a receiver should be appointed: 1) the convenience of the parties; 2) the nature of the property, i.e., the ability of the judgment creditor to reach the property absent a receivership; and 3) the resistance of the judgment debtor to collection of the outstanding indebtedness.").

not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b)　The court may:

    (1)　order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

    (2)　otherwise apply the property to the satisfaction of the judgment; or

    (3)　appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

TEX. CIV. PRAC. & REM. CODE § 31.002(a), (b).

"The relief allowed in subsection (b) may be granted only when the conditions in subsection (a) exist." *Guerinot*, 2013 WL 2456741, at *4 (citing *Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "Under subsection (a), a judgment creditor may receive aid from the trial court only if the judgment debtor owns property that is nonexempt and that could not readily be attached or levied on by ordinary legal process." *Guerinot*, 2013 WL 2456741, at *4. The judgment creditor may seek assistance under the turnover statute "in the same proceeding in which the judgment is rendered or in an independent proceeding." TEX. CIV. PRAC. & REM. CODE § 31.002(d).

44

The trial court is not required to identify in the order the specific property subject to turnover. *Id.* § 31.002(h). But the party seeking appointment of a receiver must demonstrate that the conditions of section 31.002 exist. *Tanner*, 274 S.W.3d at 322. "Section 31.002 does not specify, or restrict, the manner in which evidence may be received in order for a trial court to determine whether the conditions of section 31.002(a) exist." *Tanner*, 274 S.W.3d at 322. The statute also does not "require that such evidence be in any particular form, that it be at any particular level of specificity, or that it reach any particular quantum" to support a trial court's order appointing a receiver. *Id.*

Once a judgment creditor has made a factual showing that the judgment debtor owns nonexempt property, "the burden then shifts to the debtor to account for those assets." *Pillitteri v. Brown*, 165 S.W.3d 715, 722 (Tex. App.—Dallas 2004, no pet.) (citing *Beaumont Bank*, 806 S.W.2d at 226). "If a judgment debtor claims that an asset is exempt, it is the debtor's burden to prove the exemption."[8] *Pillitteri*, 165 S.W.3d at 722–23 (citing *Beaumont Bank*, 806 S.W.2d at 226).

---

[8] In *Beaumont Bank*, the Supreme Court of Texas explained that such burden shifting is "consistent with the legislative intent underlying the turnover statute" and quoted the following passage from a legal article written by Judge David Hittner:

> The changes [in the turnover statute] are open-ended in that they allow a judgment creditor to get aid in collection from the Court in the form of an order which requires the debtor to bring to the Court all documents or property used to satisfy a judgment. The actual effect of the bill is to require the burden of production of property

Our Court has previously reversed turnover orders under section 31.002 when a lack of evidence left the court with no factual basis to conclude that the conditions of section 31.002(a) had been met. In *Guerinot*, the turnover applicant attached an exhibit to the application but failed to have the exhibit admitted into evidence at the hearing on the application. *Guerinot*, 2013 WL 2456741, at *5. In addition, the exhibit itself contained no information demonstrating that the conditions of section 31.002(a) had been met. *Id.* Our court of appeals concluded: "Although a challenge to the lack of evidence is ordinarily not an independent basis of error . . . this record does not contain any evidence of a substantive or probative character on which the trial court's turnover can be sustained." *Id.*

In *Tanner*, the turnover application stated:

> Applicant has no knowledge of any property owned by Respondent which is subject to execution. The property made the basis of this Application is not readily attachable by ordinary legal process . . . . Applicant has reason to believe and does believe that every Respondent owns or has rights to the non-exempt personal property of the described nature and type.

*Tanner*, 274 S.W.3d at 323. No evidence was attached to the application, the trial court did not hold an evidentiary hearing on the application, and nothing in the

---

which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy his judgment.

Hittner, *Texas Post–Judgment Turnover and Receivership Statutes*, 45 TEX. BAR J. 417, 418 (April 1982) (quoting House and Senate Committee reports, TEX. REV. CIV. STAT. art. 3827a (now TEX. CIV. PRAC. & REM. CODE § 32.001)).

record on appeal indicated that the trial court received any evidence by any other means before granting the turnover order. *Id.* Our Court concluded that the trial court abused its discretion by entering the turnover order when no evidence supported the court's decision. *Id.*

In this case, Princeton sought appointment of a receiver under chapter 31 of the Civil Practice and Remedies Code. The motion was filed in the same proceeding in which the judgment was rendered. *See* TEX. CIV. PRAC. & REM. CODE § 31.002(d). And the proposed order, which was attached to the motion, included a recital that the order was "[b]ased on the pleadings, the evidence and the argument of counsel." In the motion, Princeton argued that Great Value operated self-storage facilities throughout the country, that it had a website whose name was included in the motion, that Great Value had a bank account in Austin, Texas as of July 2018, and that it listed real estate and cash assets exceeding $6 million on its balance sheet as of August 2018. Princeton also argued that WCCG had a website (whose name was included in the motion) and that on the website, WCCG purported to own other business entities. Princeton maintained that the websites themselves were nonexempt personal property. *See Restrepo v. All. Riggers & Constructors, Ltd.*, 538 S.W.3d 755, 759 (Tex. App.—El Paso 2017, no pet.) (domain name is nonexempt personal property). In reply to Great Value and WCCG's opposition to the appointment of a receiver, Princeton further argued that

47

the NPA and the list of facilities attached to it constituted some additional evidence that Great Value and WCCG had a nonexempt interest in storage facilities.

Unlike *Guerinot* and *Tanner*, in which there was a complete absence of any factual basis to support a turnover order, in this case, Princeton provided a factual basis and directed the court to evidence previously considered in the motion for summary judgment. In *Sivley v. Sivley*, 972 S.W.2d 850 (Tex. App.—Tyler 1998, no pet.), the appellant argued that the court abused its discretion by entering an ex parte turnover order without a hearing or receiving evidence. 972 S.W.2d at 861. The court of appeals affirmed the order, holding that the court had not abused its discretion because it had received evidence relevant to the turnover order at three hearings prior to granting the turnover order. *Id.* at 862. Here, Princeton directed the court to summary-judgment evidence that showed Great Value had nonexempt assets and websites that themselves are nonexempt assets. The burden was then shifted to Great Value and WCCG to show that the assets did not exist or were exempt. *See Pillitteri*, 165 S.W.3d at 722–23 (citing *Beaumont Bank*, 806 S.W.2d at 226). Great Value and WCCG made no such showing.

Finally, we note that "[i]ssuance of a turnover order is a statutory remedy grounded in equity. *Gerdes v. Kennamer*, 155 S.W.3d 541, 545 (Tex. App.—Corpus Christi—Edinburg 2004, no pet.) (citing *Ex parte Johnson*, 654 S.W.2d 415, 417 (Tex. 1983) (orig. proceeding)). Before the trial court entered final

48

summary judgment, Princeton propounded discovery including a request for production that sought: "Documents sufficient to show all assets, including real estate, or holdings owned by Great Value or WCCG from July 31, 2012 [the date of the first note/NPA] to present, including when those holdings were acquired." In response, Great Value and WCCG objected on the grounds of privilege, trade secret, confidential information, overbreadth, undue burden, harassment, and relevance. Great Value and WCCG never produced any documents in response to this or any other request for production, and Paul refused to appear for deposition. At oral argument, counsel for Great Value and WCCG erroneously argued that they had no obligation to respond to discovery in the absence of an order compelling production.

Great Value and WCCG have attempted to lie behind the log by refusing to respond to discovery seeking evidence of their assets and then arguing that Princeton is not entitled to aid to satisfy its judgment because it has no evidence of their assets. In this case, the log can provide no hiding place because permitting such an outcome would frustrate the purpose of the turnover statute, "by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process." *Beaumont Bank*, 806 S.W.2d at 224.

In *Hennigan v. Hennigan*, 666 S.W.2d 322, 323–24 (Tex. App.—Houston [14th Dist.] 1984), writ ref'd n.r.e., 677 S.W.2d 495 (Tex. 1984), the Fourteenth

49

Court of Appeals rejected a challenge to the appointment of a receiver when the equities similarly disfavored the opponent of the receivership. In *Hennigan*, a receiver was appointed pursuant to the predecessor statute to section 31.002. 666 S.W.2d at 323 On appeal, the judgment debtor argued that the receivership order was improper because no evidence was adduced that he owned property that could be subjected to a receivership. *Id.* The judgment debtor was an attorney, and the court noted that income from retainer fees and hourly billing is "inherently difficult to get to satisfy a judgment." *Id.* Perhaps more important was the evidence that the judgment debtor intended to hamper all efforts at collection. *Id.* "[W]hen asked point blank by the trial judge whether he intended to pay the judgment, he responded, 'Well, not voluntarily.'" *Id.* In addition, the judgment debtor refused to attend depositions. *Id.* Affirming the trial court, the court of appeals stated:

> Appellant's testimony and apparent refusal to attend two depositions concerning his assets made it abundantly clear that his moneys could not be *readily* attached. Article 3827a was designed to aid a judgment creditor who found himself in such a predicament. *See Arndt v. National Supply Co.*, 650 S.W.2d 547 (Tex. App.—Houston [14th Dist.] 1983, no writ); *Pace v. McEwen*, 617 S.W.2d 816 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ); SENATE COMM. ON JUDICIAL AFFAIRS, BILL ANALYSIS, Tex. S.B. 965, 66th Leg. (1979). The trial court correctly appointed a Receiver.

*Id.* at 324.

We conclude that the trial court did not abuse its discretion in granting the application for a receiver, and we overrule this issue.

## Conclusion

We affirm both the trial court's judgment and the order appointing a receiver. All pending motions are dismissed as moot.

Peter Kelly
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.